**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-50765
Summary Calendar

WILLIAM D. STONEBURNER, Lieutenant Colonel,

Plaintiff-Appellant,

VERSUS

SECRETARY OF THE ARMY; ARMY BOARD FOR CORRECTIONS
OF MILITARY RECORDS,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas

September 8, 1998

Before  DUHÉ, DeMOSS and DENNIS, Circuit Judges

PER CURIAM:

William D. Stoneburner, a Lieutenant Colonel in the United States Army Reserve, appeals the grant of summary judgment dismissing his challenge to an Army Board for Correction of Military Records' ("ABCMR") decision. Stoneburner sought to have the evaluations submitted by his rating officers removed from his Officer Evaluation Report ("OER"). He alleges that the ABCMR's denial of his request was arbitrary and capricious, an abuse of

discretion, and unsupported by substantial evidence. He also alleges that the Army's evaluation procedures violate the Equal Protection Clause. We affirm.

## I.  BACKGROUND

While on active duty at Fort Hood, Texas, Stoneburner underwent a routine performance and promotion potential evaluation covering the period from June 1, 1986 through May 31, 1987. He was evaluated by the rater, Lt. Colonel Ronald W. English,("English") and by the senior rater, Colonel Lawrence C. Richardson ("Richardson"). Richardson became Stoneburner's commander and senior rater March 2, 1987. From that date through May 28, 1987, his last day of active duty at Fort Hood, Stoneburner was in a nonrated status[1] for 53 days and was absent from observation another 12 days.

To qualify as a senior rater, AR 623-105, ¶ 3-10(b)(1) requires that the senior rater serve in that capacity for a minimum of 60 calendar days, without regard to the rated officer's rated or nonrated status. The rater, however, qualifies to evaluate the rated officer only if the rated officer remains in a rated status at least 90 days during the rating period. AR 623-105, ¶ 4-10(c)(3). Richardson had 88 days, including both rated and nonrated days, to observe and evaluate Stoneburner; English

---

[1]Being in nonrated status means that the officer being evaluated is not performing work related to his duty position. Stoneburner was on leave and in school preparing for a new assignment during the 53 days.

also qualified as an evaluator, having observed Stoneburner for at least 90 rated days before rendering his report.

English rated Stoneburner favorably, giving him the highest ratings for performance and professionalism and described his performance and potential as "always exceed[ing] requirement." He commented that "LTC Stoneburner has performed his duties as Operations and Training Officer in an exemplary manner. . . . LTC Stoneburner is a fine U.S. Army Reserve Officer and has demonstrated his ability to serve on active duty with the competence to make a professional contribution." He recommended, however, that Stoneburner be promoted with his contemporaries, not ahead of them. He also recommended that Stoneburner be continued in the U.S. Army Reserve when he reached his mandatory release from active duty.

Richardson, the senior rater, assigned Stoneburner a mediocre rating in potential, two ranks lower than other lieutenant colonels whom he evaluated at the same time. He added the following narrative comments to that section of the OER:

> Fully concur with rater's comments. During my observation of LTC Stoneburner's performance he has demonstrated a very capable ability to plan, schedule, and coordinate Reserve Component training. He is a good staff officer and consistantly [sic] meets the standards of Lieutenant Colonel on active duty and should continue to serve at that level on a higher headquarters staff where he can make significant contributions to the mobilization and training readiness of Reserve Component units.

3

After receiving the OER, Stoneburner requested a "Commander's Inquiry" to correct alleged errors and injustices in the report. Administrative errors were corrected and the Commander, Lt. General Crosbie Saint, determined that those errors did not invalidate the report. He further determined that the senior rater evaluation and comments were not illegal because Richardson was technically qualified to perform the rating. He did question the fairness of an evaluation by a senior rater who had had only a minimum observation period rather than an evaluation completed by the longer-serving departing senior rater.

Stoneburner next appealed to the Officer Special Review Board ("OSRB"), requesting that the OER senior rater portion be deleted because the evaluation was unjust and illegal. In an OSRB interview, Richardson acknowledged that he had placed Stoneburner at the low end of his personal senior rater profile. He insisted, however, that the ranking was appropriate, based on his observations and review of Stoneburner's work. He viewed the OER results as fair, accurate, and objective. The OSRB found no basis for making an exception to the regulatory policy that determines a senior rater's eligibility. It further concluded that Stoneburner had not provided clear and convincing evidence to justify a deletion or amendment to the OER.

Stoneburner appealed a second time to the OSRB, raising essentially the same allegations. The OSRB contacted the rater, English, who reported that Stoneburner's performance over the last

five to six months of the rating period had deteriorated significantly.  He cited "a bad attitude" and noted that Stoneburner "did not want to come to work and, when he did, his appearance did not represent what was expected of a field grade officer."

In a second interview, Richardson stated that because of his limited access to Stoneburner, he had "based much of his impression of the appellant's performance and potential on comments from the previous SR [senior rater] during their two week overlap when the SR 'sized-up' the appellant and other personnel."  Richardson further explained that he had personally prepared his own OER comments and, because he did not see Stoneburner as having potential for promotion to full colonel, he had rated him accordingly.

The OSRB denied this second appeal, again finding that Stoneburner had failed to provide clear and convincing evidence to justify the deletion or amendment of the OER.  It did not address Stoneburner's constitutional challenge to AR 623-105; it did determine, however, that the senior rater had adequate information available to prepare his portion of the OER.  The OSRB further found that the rater's evaluation was not contradictory or ambiguous.

Stoneburner's third appeal was to the Army Board for Corrections of Military Records.  The ABCMR concluded, inter alia, that the OER did not meet the criteria to be classified as a

referred report.[2]  It found that the senior rater had met the minimum time in the position necessary to provide an evaluation. It further found that Stoneburner's due process claim was not supported by the record because the applicable administrative procedures had been followed.  It determined that the OER appeared to "represent a fair, objective and valid appraisal of [Stoneburner's] demonstrated performance and potential during the period in question."  In making its decision, the ABCMR obtained an advisory opinion from the OSRB.  The OSRB found for the third time that Stoneburner had not provided clear and convincing evidence to support his contentions nor had he established that the OER met the AR 623-105 referral requirements.  Thus the ABCMR determined that Stoneburner failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice.

Stoneburner appealed the ABCMR decision to the district court. He claimed that the ABCMR's decision was arbitrary, capricious, contrary to law, or unsupported by substantial evidence.  His amended complaint alleged that the OER was erroneous, improper, and unjust because various provisions of AR 623-105 were disregarded. The Army moved for summary judgment, denying Stoneburner's allegations against the ABCMR.

Stoneburner filed a cross-motion for summary judgment.  He

---

[2]A referred report is one that has an adverse impact upon the rated officer's military career.  Such reports are referred to the rated officer so that he may respond to the allegations before the report is placed in his personnel file.  AR 623-105 4-27.

attacked the constitutionality of the ABCMR decision and additionally argued that the ABCMR's refusal to classify the contested OER as a "referred" report was arbitrary and capricious. He pointed to Richardson's interview and statement that Stoneburner lacked the potential to be a full colonel in support of this contention. He also disputed the ABCMR's decision that the OER was not invalid. He again argued that Richardson was not eligible under AR 623-105, ¶ 3-10(b)(1) to act as a senior rater. He contended that regulation's inclusion of non-rated time for qualification denied Richardson sufficient observation time for a just evaluation.

The district court granted the Army summary judgment. It determined that the ABCMR had the entire record before it in making its decision. It concluded that the record supported the ABCMR's determination that the OER should not have been classified as a referred report, and that Stoneburner failed to show that the ABCMR's decision to deny him relief was either arbitrary or capricious or that it was not based upon substantial evidence. The district court also determined that Stoneburner did not identify a protected property interest and so did not establish the deprivation of either substantive or procedural due process. Finally, the district court concluded that Stoneburner had not identified the manner in which he had been denied equal protection.

Stoneburner moved for reconsideration of the classification of the OER as a referred report. He also requested that the court

7

clarify whether it had determined that AR 623-105 violates the Equal Protection Clause because it permits an officer to be rated by a senior rater who may have less than 60 days of rated time within which to observe and evaluate the rated officer. The district court denied the motion. Stoneburner appeals.

## II.  Discussion

### A.  Standard of Review

This court reviews a district court's grant of summary judgment <u>de novo</u>, applying the same standard as the district court. Fed. R. civ. P. 56(c).

The ABCMR, a civilian board appointed by the Secretary of the Army, has statutory authority to "correct any [Army] record" if necessary to "correct an error or remove an injustice." 10 U.S.C. § 15552(a)(1). ABCMR decisions "are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence." <u>Chappell v. Wallace</u>, 462 U.S. 296, 303 (1983); <u>Geyen v. Marsh</u>, 782 F.2d 1351, 1352 (5th Cir. 1986). A federal court may not review the ABCMR's decision <u>de novo</u>, <u>Geyen</u> at 1352, because "[J]udges are not given the task of running the Army." <u>Orloff v. Willoughby</u>, 345 U.S. 83 (1953). Thus, judicial review of the Board's decision is limited to the record before the Board at the time of its decision. <u>Geyen v. Marsh</u>, 775 F.2d 1303, 1309 (5th Cir. 1985).

### B.  The Officer Evaluation Report

8

Stoneburner attacks the validity of the OER on two grounds. First, he contends that Richardson was not eligible to serve as his senior rater and thus his ratings were unfair and unjust. Second, he argues that the report should have been referred because it contained negative comments that indicated Stoneburner should not be promoted. We will examine each argument in turn.

To evaluate a rated officer, "the senior rater must normally serve in that capacity for a minimum of 60 calendar days." AR 623-105, ¶3-10(b)(1). He is directed to "[u]se all reasonable means to become familiar with the rated officer's performance." AR 623-105, ¶ 3-12(a). Those means include personal contacts, records and reports, and the rater's evaluations. Id. In response to General Saint's request for clarification of the policy requiring the rater to qualify based on rated days and the senior rater to qualify solely on calendar days, the U.S. Total Army Personnel Agency explained the reason for the difference:

> The relationship between the rater and the rated officer is the most important in the rating chain. It most often determines the nature of performance and the resulting evaluation. As a result, this relationship requires the longest qualification requirement, determines whether a report is prepared, and is the only relationship affected by the rated officer's non-rated time.
>
> The responsibility relationship between the rated officer and other rating officials (dual supervisor, intermediate rater, or senior rater) has less impact on actual performance and is mainly associated with an evaluation of potential. These relationships, therefore,

9

> deliberately have shorter qualification requirements, do not normally determine whether a report is required, and are not affected by rated officer non-rated time.

The ABCMR thus determined that the nonrated time accrued by the rated officer does not affect the qualifications or eligibility of the senior rater to provide an evaluation after serving the minimum time in that position.

We find that there is substantial evidence to support the ABCMR's decision that Richardson was eligible to serve as Stoneburner's senior rater and that he fairly evaluated Stoneburner. He served as senior rater from his arrival on March 2, 1989, until May 28, 1989, Stoneburner's last duty day of the OER period. This 88-day period therefore met the 60-calendar-day regulatory requirement. Richardson used all the recommended means in making his evaluation, including input from the prior senior rater. Accordingly, the record supports ABCMR's determination that Richardson was eligible to serve as Stoneburner's senior rater and that his evaluation was "a fair, objective[,] and valid appraisal."

Stoneburner also complains that the ABCMR's decision that the OER was not a referred report was arbitrary and capricious and not based on substantial evidence. We disagree.

The reports that are classified as referred include:

> a. A relief for cause report submitted. . .
> b. Any report with negative remarks about the rated officer's professional ethics in Part IVb, and/or in the rating official's narrative evaluation(s).
> c. Any report with a rating of 4 or 5 in any

10

of the 14 attributes in Part IVa.

d.    Any report resulting in a performance evaluation of "Often failed requirements" or "Usually failed requirements" in Part Vb.

e.    Any report with a potential evaluation in Part Vd of "Do not promote" or narrative comments to that effect from any rating official.

f.    Any report with a potential evaluation in Part Vd of "Other," where the required explanation has derogatory information.

g.    Any report with a senior rater potential evaluation in one of the bottom three blocks in Part VIIa.

h.    Any report with ratings or comments that, in the opinion of the senior rater, are so derogatory that the report may have an adverse impact on the rated officer's career.

i.    Any report with an entry of "FAIL" in Part IVa, item 3, indicating noncompliance with AR 350-15; or an entry of "NO" in Part IVa, item 12, indicating noncompliance with AR 600-9.

AR 623-105, ¶4-27.

The ABCMR found that Stoneburner's OER met none of the criteria set out above and did not contain ratings and comments so derogatory that the report would have an adverse impact on Stoneburner's career. Stoneburner contends that the evaluation remarks indicating that he should continue to serve at duty positions of similar levels of responsibility were the same as a comment of "do not promote."

English, the rater, gave all "1's," the highest rating, in all 14 attributes in part IVa. In Part IVb, the performance and potential evaluation, he marked the box "Always exceeded requirement." In the comments section, the rater stated "LTC

11

Stoneburner has performed his duties as Operations and Training Officer in an exemplary manner. . . . LTC Stoneburner is a fine U.S. Army Reserve Officer and has demonstrated his ability to serve on active duty with the competence to make a professional contribution." When presented with the choices for promotion, English marked the box "Promote with contemporaries." He did not select "Promote ahead of contemporaries," "Do not promote," or "Other." In commenting on Stoneburner's potential, he wrote, "LTC Stoneburner should be continued in the U.S. Army Reserve as an Individual Ready Reservist when he reaches his mandatory release from active duty in June 1990." None of these ratings or comments were sufficient to cause the senior rater to consider them derogatory and consequently classify this as a referred report.

The senior rater, Richardson, assigned mediocre ratings to Stoneburner in his portion of the OER. Under Part VIIa, when given nine levels from which to choose in assessing Stoneburner's potential, he marked the fifth level. He commented that Stoneburner "should continue to serve at that level on a higher headquarters staff where he can make significant contributions to the mobilization and training readiness of Reserve Component units."

Stoneburner argues that his OER is similar to the OER in Muse, where the rated officer received "superior" ratings in one portion of his report but obviously disparaging remarks in another portion. Muse v. United States, 21 Ct.Cl. 592 (1990). In Muse, the

12

"superior" ratings were accompanied by clearly contradictory comments: "[Muse's] performance as trial counsel was erratic. he was frequently criticized for ineffective courtroom performance. He is not a good public speaker and was not always thoroughly prepared in court." Id. at 606. We find that the raters' comments on Stoneburner's performance and potential a far cry from the derogatory comments found in Muse's OER. We conclude that Stoneburner's raters' comments do not rise to a level that could be considered adverse to his career.

In sum, none of the ratings or comments fall within the guidelines for a referred report. Although interviews with both English and Richardson during the OSRB investigations reveal that both raters doubted Stoneburner's potential for advancement, the OER did not reflect this.

A review of the summary judgment proof reflects that the ABCMR had the entire record before it in making its decision. That record included the reports and investigations conducted during Stoneburner's two appeals to the OSRB, as well as a third investigation by the OSRB at ABCMR's request. The ABCMR also considered the OER, Stoneburner's application for correction of military records, his military personnel records, the opinions from the OSRB and the pertinent Army regulations and C.F.R. sections. Thus, we find that Stoneburner has not established that the ABCMR's decision was not based on substantial evidence or that it was either arbitrary or capricious. Accordingly, we affirm the

13

district court's ruling on that point.

## C. Equal Protection Violation

Stoneburner contends that the Army's regulatory criteria for determining the qualifications of senior raters violate equal protection. He claims that he was denied equal protection because there is no requirement that he, as the rated officer, be in 60 days of rated time in order for the senior rater to be eligible to serve as his senior rater although there is such a requirement for raters.[3]  He argues that the evaluation prepared by his senior rater was less fair than an OER prepared for a rated officer who was in rated time for the entire 60 days.

The Equal Protection Clause, as incorporated into the Fifth Amendment's due process right[4], essentially directs that all persons similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  To state an equal protection claim Stoneburner must allege, inter alia, that similarly situated individuals were treated differently. Muhammad v. Lynaugh, 966 F. 2d 901, 903 (5th Cir. 1992).  He must also allege purposeful or intentional discrimination. McCleskey v. Kemp, 481 U.S. 279, 292 (1987).  Stoneburner must show that the Army has no rational basis for treating similarly situated persons

---

[3]AR 623-105, ¶ 3-10(b)(1); AR 623-105, ¶ 4-10(c)(3).

[4]Bolling v. Sharpe, 347 U.S. 497 (1954).

differently.[5]

Stoneburner appears to argue that not all lieutenant colonels are treated alike in their ratings, i.e., some have more rated days in which to be evaluated by senior raters than he and other lieutenant colonels have. We question the class Stoneburner has fashioned to make this claim. His argument merely rehashes his earlier claim that Richardson was not qualified to be his senior rater.

Assuming, however, that he has identified a legitimate class, Stoneburner fails to show that the Army's regulation has no rational basis. The regulations explain that the senior rater evaluates the rated officer "from a broad organizational perspective." AR 623-105, ¶ 3-10(a). In its explanation of the different roles of the rater and senior rater, supra, § IIB, the U.S. Army Total Personnel Agency opinion provides this rational basis. The Army also points to the undue administrative burden officers in the field would suffer if they had to keep track of nonrated time to qualify senior raters. We consider this concern an additional rational basis for requiring only calendar days to qualify a senior rater. We also find that Stoneburner has failed to establish purposeful or intentional discrimination in the application of the Army's OER regulations. Consequently, we affirm

---

[5]Guerra v. Scruggs, 942 F. 2d 270, 279 (4th Cir. 1991). (because no fundamental right or suspect classification is involved, rational basis test applies).

the district court's grant of summary judgment on the equal protection issue and deny Stoneburner's motion to enlarge the record.

AFFIRMED.