**Michael STRICKLAND, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–1390C.

United States Court of Federal Claims.

July 30, 2004.

As Corrected Aug. 9, 2004.

John B. Wells, Slidell Louisana, counsel for plaintiff.

Matthew P. Reed, United States Department of Justice, Civil Division Commercial Litigation Branch, counsel for defendant, with whom were Assistant Attorney General Peter D. Keisler, Director David M. Cohen, Assistant Director Franklin E. White, and LCDR Gregory R. Bart, JAGC, of counsel.

1. The relevant facts and procedural history recited herein were derived primarily from the June 4, 2003 Administrative Record ("AR"). In addition, other references herein are made to: the June 6, 2003 Complaint ("Compl."); the Government's June 15, 2004 Motion for Judgment Upon the Administrative Record ("Gov't Mot."); plain-

## OPINION AND FINAL JUDGMENT

BRADEN, Judge.

This case presents a question of statutory interpretation implicating constitutional separation of powers:

> Whether Congress delegated final authority to correct military records to civilian boards or to an executive branch appointed military Secretary?

This is a question on which panels of the United States Court of Appeals for the Federal Circuit appear to have reached different conclusions. The decisions holding that final authority rests with civilian boards are consistent with those of the United States Court of Appeals for the Third Circuit and several other federal appellate courts. The decisions holding that an executive branch appointed military Secretary has final authority have been followed by the United States Court of Appeals for the D.C. Circuit. In this case, the court has determined that Congress delegated final authority to correct military records to civilian boards.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY [1]

### A. Factual Background.

Plaintiff was a petty officer in the United States Navy who entered into active duty on May 4, 1982. See AR at 3. On March 30, 1998, plaintiff was arrested by the Florida Police and charged with a felony offense in violation of Fla. Stat. § 800.04. See AR at 4–8, 398. Plaintiff disputed the charges. See AR at 4, 12, 73.

Plaintiff promptly sought the advice of a Navy Officer who, in turn, discussed the situation with the local Trial Services office, which indicated that it was unlikely that Naval Legal would institute a separation action over a misdemeanor. See AR at 3–4. The Navy Officer then advised plaintiff's Commanding Officer of the situation. See AR at

tiff's February 24, 2004 Opposition to the Government's Motion and Cross Motion for Judgment on the Administrative Record ("Pl.Opp."); the Government's May 6, 2004 Reply and Opposition ("Gov't Reply"); and plaintiff's June 2, 2004 Reply ("Pl.Reply").

3–4. Subsequently, the Navy Officer advised plaintiff of these views. *See* AR at 4. Plaintiff also consulted a civilian attorney and was advised that the total cost of a trial would be approximately $7,500–$10,000 and, if convicted, plaintiff would be incarcerated as a felon. *See* AR at 7, 93, 226. On July 10, 1998, plaintiff pled *nolo contendere* to a misdemeanor charge. *See* AR at 5. Thereafter, plaintiff was sentenced by a Florida state judge to twelve months probation, fined $1,000.00, and ordered to perform fifty hours of community service. *See* AR at 5, 224–25, 397–403.

On October 14, 1998, a Case Review Committee of the Navy Family Advocacy Program substantiated the allegations against plaintiff and issued a report that was forwarded to plaintiff's Command and the Navy Personnel Command. *See* AR at 6. On October 30, 1998, plaintiff was informed that he was being processed for an administrative separation action, pursuant to the Military Personnel Manual ("MILPERSMAN") §§ 1910–142 (Misconduct—Commission of a Serious Offense) and §§ 1910–144 (Misconduct—Civilian Conviction.) *See* AR at 7. Plaintiff was informed of his right to a separation proceeding before an Administrative Discharge Board ("ADB"), which plaintiff elected to exercise. *See* AR at 7.

### B. Procedural History.

#### 1. Proceedings Before The Administrative Discharge Board.

On December 10, 1998, an ADB was convened to conduct separation proceedings. *See* AR at 8. The Recorder introduced evidence in support of plaintiff's separation and advised the ADB that because of plaintiff's *nolo contendere* plea, a finding of misconduct was mandated under MILSPERSMAN § 1910–518. *See* AR at 8. Plaintiff's military counsel presented testimony and exhibits in support of plaintiff's retention, including witnesses who testified to plaintiff's "excellent performance of duty." *See* AR at 9. Initially, the ADB determined that a preponderance of the evidence did not support a finding of misconduct. *See* AR at 9. The Recorder and plaintiff's military defense counsel, however, advised the ADB that according to the MIL-

PERSMAN, a plea of *nolo contendere* mandated a finding of misconduct due to a civilian conviction. *See* AR at 9–10. Based on this advice, the ADB reversed its prior ruling, but nevertheless unanimously recommended plaintiff's retention by the Navy. *See* AR at 10. On December 22, 1998, plaintiff's Commanding Officer "favorably endorsed the ADB report and ... strongly recommended [plaintiff's] retention, characterizing him as a 'valuable asset' ... and noting that he was one of the finest Range Masters in the Navy." *See* AR at 10, 337.

On April 5, 1999, the ADB's initial ruling was forwarded to the Navy Personnel Command. *See* AR at 10. On May 12, 1999, the Chief of Navy Personnel forwarded the case to the Assistant Secretary for Manpower and Reserve Affairs ("Assistant Secretary") reporting that "ADB found [plaintiff] committed misconduct due to civilian conviction and recommended retention," but advised the Assistant Secretary to disregard the ADB and Commanding Officer's recommendation of retention and support separation. *See* AR at 10, 332. The Assistant Secretary concurred, but directed that plaintiff's separation for service be listed as: "General (Under Honorable Conditions)." *See* AR at 10, 332. Contemporaneously, plaintiff filed an action in the United States District Court for the Southern District of Mississippi to enjoin separation. *See* AR at 11. On January 12, 2000, the federal district court denied plaintiff's motion for preliminary injunction and dismissed with prejudice. *See* AR at 11, 46; *see also Strickland v. Danzig,* No. 1:99–CV–242–GR (S.D.Miss. Jan. 14, 2000) (order denying preliminary injunction).

On February 3, 2000, plaintiff was discharged from the Navy. *See* AR at 11. On October 9, 2000, the United States Court of Appeals for the Fifth Circuit dismissed plaintiff's appeal of the district court judgment on jurisdictional grounds, because plaintiff had not yet exhausted administrative remedies before the Board for Corrections of Naval Records ("BCNR"). *See Strickland v. Danzig,* 235 F.3d 1339 (5th Cir.2000), *cert. denied,* 532 U.S. 1051, 121 S.Ct. 2191, 149 L.Ed.2d 1023 (2001).

### 2. Proceedings Before The Board For Corrections Of Naval Records.

On October 24, 2001, plaintiff petitioned the BCNR to set aside the Assistant Secretary's separation determination and requested restoration to active duty, back pay and allowances, and a correction of his service record to remove any reference to the discharge. *See* AR at 11–13. After reviewing the record of the ADB proceedings, a three-member panel of the BCNR affirmed the ADB's decision to separate, however, the BCNR decided "partial corrective action is warranted. Specifically, . . . although [BCNR] believes that [plaintiff's] . . . contentions of legal error have no merit, [plaintiff's] discharge was unfair and should be set aside." *See* AR at 17. The BCNR found the plaintiff should be awarded three months constructive service to qualify him for retirement. *See* AR at 22–23. In making this correction, the BCNR was persuaded of the overall unfairness of plaintiff's discharge, in light of assurances made by plaintiff's Command that he would not be processed if he pled *nolo contendere* to a misdemeanor charge. *See* AR at 20–23. The BCNR determined that these assurances prejudiced plaintiff's ability to defend against the allegations. The BCNR further noted that plaintiff had provided nearly eighteen years of faithful service to the Navy and was near retirement eligibility at the time of his discharge. *See* AR at 21–22.

Nevertheless, on December 20, 2002, the Assistant Secretary of the Navy for Manpower and Reserve Affairs ("Assistant Secretary") overruled the BCNR's recommendation and denied plaintiff's requests for back pay and retirement status:

> The BCNR concluded that petitioner's discharge was unfair because he had been mistakenly assured by his command that he would not be processed for discharge if he pled guilty to a misdemeanor. I disagree that this constitutes an error or injustice warranting relief. The command had no authority to extend such assurances. In addition, given the circumstances surrounding the incident, I am not persuaded that the command's erroneous assurances were the motivating factor in petitioner's decision not to contest the charges.
>
> In light of these circumstances, I find no error or injustice warranting relief. The petition is denied.

AR at 23.

On June 6, 2003, plaintiff filed this action in the United States Court of Federal Claims seeking restoration to active duty with all pay and allowances retroactive to the date of discharge, retirement pay from the date of his eligibility for retirement, and other relief. *See* Compl. at Prayer. On August 15, 2003, this case was transferred from the Honorable Robert H. Hodges to the undersigned judge.

On January 15, 2004, the Government filed a Motion for Judgment Upon the Administrative Record. On February 24, 2004, plaintiff filed an Opposition and Cross Motion for Judgment on the Administrative Record. On May 6, 2004, the Government filed a Reply and Opposition. On June 2, 2004, plaintiff filed a Reply.

## DISCUSSION

### A. Jurisdiction.

The Tucker Act conveys "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2000). The Tucker Act, however, is only a "jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Therefore, in order to pursue a substantive right, plaintiff "must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." *James v. Caldera*, 159 F.3d 573, 580 (Fed.Cir.1998).

The Military Pay Act provides that "a member of the uniform service who is on

active duty ... [is] entitled to the basic pay of the pay grade to which assigned." 37 U.S.C. § 204 (2000). If it is found that separation from one of the armed services was improper, then the entitlement to be paid remains, thus establishing the court's jurisdiction under the Tucker Act. *See Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir. 1997) ("It is well established that 37 U.S.C. § 204 serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge.").

The United States Court of Federal Claims has jurisdiction over the plaintiff's claims because the complaint properly has invoked both the Tucker Act, *i.e.,* the "specific statute [that] sets the court's jurisdictional parameters" and the Military Pay Act, *i.e.,* "a separate statute [that] establishes the right that allegedly has been breached." *See Fisher v. United States*, 364 F.3d 1372, 1376 (Fed.Cir.2004). In exercising its jurisdiction, the court is consistent with the United States Court of Appeals for the Federal Circuit's holding in *Voge v. United States*, 844 F.2d 776, 781 (Fed.Cir.1988) (quoting *Silbert v. United States*, 566 F.2d 1190 (1977) ("[S]ection 1491(a) gives the Claims Court power to order the correction of military records only 'incident of and collateral to' its award of a money judgment."); *see also Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983) (recognizing "judicial review of military service determinations with money consequences is available[.]").[2]

The Administrative Record also confirms that plaintiff had exhausted all available administrative remedies by the time this action was filed. *See* Compl. ¶¶ XI–XXXI; AR at 2–23.

**B. Justiciability.**

The United States Court of Appeals for the Federal Circuit repeatedly has empha-

sized the duty of the court, in cases concerning military personnel and benefits, to be mindful of the import of the doctrine of justiciability, *i.e.,* whether the dispute is one within the competency of the court. *See Fisher*, 364 F.3d at 1381 ("Justiciability has both constitutional and prudential dimensions ... Though justiciability has no precise definition or scope, doctrines of standing, mootness, ripeness, and political question are within its ambit. One aspect of justiciability relates to the issue of whether deference in a given case should be given by the judiciary to the particular authority and competence of another branch of government ... [Justiciability also] can arise under basic separation of powers concepts or because Congress has dictated that such deference be given.") (citations omitted).

Thus, we have been instructed to decline to review promotion actions of selection boards. *See, e.g., Dysart v. United States*, 369 F.3d 1303, 1315 (Fed.Cir.2004) ("[T]he subject of military promotions is beyond the competence of courts to review."); *Fluellen v. United States*, 225 F.3d 1298, 1304 (Fed.Cir. 2000) ("[A] promotion decision presents a nonjusticiable controversy because there is no statutory or regulatory standards against which a court can review such a decision; it relates to a matter left to the discretion of the military."); *Porter v. United States*, 163 F.3d 1304, 1316–17 (Fed.Cir.1998) ("[N]o court is in a position to resolve and pass upon the highly complicated questions and problems involved in the promotion procedure[.]") (citing *Brenner v. United States*, 202 Ct.Cl. 678, 692–94, 1973 WL 21354 (1973), *cert. denied*, 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974)). In addition, cases concerning the release of an officer from active duty are beyond the competency of the court. *See, e.g., Murphy v. United States*, 993 F.2d 871, 874 (Fed.Cir.1993) ("The court is not called

---

**2.** Since plaintiff has satisfied the substantive requirements of *Testan, ipso facto,* plaintiff also has satisfied any lesser jurisdictional requirements that the United States Supreme Court may have recognized in *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472–73, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003). *See Fisher*, 364 F.3d at 1376–78 (holding that *"White Mountain* [established] a new test [that] clearly lowers the

threshold for establishing that a statute or regulation is money-mandating, for it replaces a normal 'fairly interpreted' test with a less-demanding test of 'reasonable amenability' based on 'fair influences.'"); *see also id.,* 364 F.3d at 1388 (Dyk, J., dissenting) ("[T]he correct test is whether the statute can 'fairly be interpreted' as money-mandating, *i.e.,* whether it is 'reasonably amenable' to such a construction.").

upon to exercise any discretion reserved for the military[.]"); *Sargisson v. United States*, 913 F.2d 918 (Fed.Cir.1990) (declining to review decision to release surplus officers).

On the other hand, precedent does not require "deference to Executive authority ... to ignor[e] basic due process considerations ... When there is a question of whether reasonable process has been followed, and whether the decision maker has complied with established procedures, courts will intervene, though only to ensure that the decision is made in the proper manner." *Fisher v. United States*, 364 F.3d at 1381; *see also Adkins v. United States*, 68 F.3d 1317, 1323 (Fed.Cir.1995) (reviewing the procedure by which an officer was removed from a promotion list, but finding that the decision reached was nonjusticiable); *Voge*, 844 F.2d at 779 (quoting *Dept. Of Navy v. Egan*, 484 U.S. 518, 530, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988)) ("[U]nless Congress specifically' has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military[.]"). Considerations of deference also are not relevant where, as in this case, Congress has provided specific statutory guidance. *See Holley v. United States*, 124 F.3d 1462, 1468 (Fed.Cir. 1997) ("[O]ur concern is solely whether the decision ... without a full hearing before a board of inquiry violated any statute, regulation, or the fundamental due process that the Constitution provides to all persons.").

■ The Federal Circuit has provided a two part test to assist the court in determining whether or not it should exercise its jurisdiction.

Justiciability ... depends on "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded" *Baker v. Carr*, 369 U.S. 186, 198[, 82 S.Ct. 691, 7 L.Ed.2d 663] (1962).... We have emphasized that *judicial review is only appropriate where the Secretary's discretion is limited, and Congress has established "tests and standards"* against which the court can measure his conduct ... Unless such a test or standard is provided, courts must abstain.

*Murphy v. United States*, 993 F.2d 871, 872–73 (Fed.Cir.1993) (emphasis added). In this case, both tests are satisfied.

**1. The Secretary's Discretion Is Limited By 10 U.S.C. § 1552(a).**

In 1946, Congress enacted 10 U.S.C. § 1552 to provide an administrative system to correct military records and review military discharges and dismissals to avoid an increasing burden imposed on Congress occasioned by discharged servicemen seeking to have the nature, character, or type of their discharge certificate corrected. The relevant language provides:

(1) The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such correction shall be made by the Secretary acting through boards of civilians of the executive part of that military department[.]

(2) The Secretary is not required to act through a board in the case of the correction of a military record announcing a decision that a person is not eligible to enlist (or reenlist) or is not accepted for enlistment (or reenlistment) or announcing the promotion and appointment of an enlisted member to an initial or higher grade or the decision not to promote an enlisted member to a higher grade. Such a correction may be made only if the correction is favorable to the person concerned.

(3) Corrections under this section shall be made under procedures established by the Secretary concerned. In the case of the Secretary of a military department, those procedures must be approved by the Secretary of Defense.

10 U.S.C. § 1552(a).

One line of the United States Court of Appeals for the Federal Circuit's decisions interpreting 10 U.S.C. § 1552(a) appears to follow *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), wherein the United States Supreme Court held that civilian board decisions are final for purposes of judicial review. *Id.* at 303, 103 S.Ct. 2362 ("*[BCNR] decisions are subject to judicial*

review [by federal courts] and can be set aside if they are arbitrary, capricious, and not based on substantial evidence.") (emphasis added). *See, e.g., Richey v. United States*, 322 F.3d 1317, 1323 (Fed.Cir.2003) (observing "Congress has given the military secretaries the power to correct military records *using* civilian Correction Boards. 10 U.S.C. § 1552(a)(1) .... If an officer elects to pursue a remedy before the Corrections Board, *after the Board renders a final decision*, the officer may effectively obtain review of that decision in the Court of Federal Claims by filing suit under the Tucker Act.") (emphasis added); *Porter v. United States*, 163 F.3d 1304, 1324–25 (Fed.Cir.1998) ("*[S]ection 1552 imposes the ultimate responsibility on the corrections board.* . . . The *civilian boards* for correction of military records *are . . . the guardians* of the military promotion process.") (emphasis added); *Dodson v. Dept. of Army*, 988 F.2d 1199, 1204 (Fed.Cir.1993) ("These statutes [10 U.S.C. § 1552(a)] and regulations make clear that the *civilian correction boards have a duty* to determine whether there has been error or injustice and, if there has been, to grant thorough and fitting relief.") (emphasis added); *Sawyer v. United States*, 930 F.2d 1577, 1582 (Fed.Cir.1991) (affirming the BCNR's final authority regarding a claim concerning disability benefits, recognizing that a civilian disability board and the BCNR were "[b]oth sets of authorities [established to] *act on behalf of the Secretary*, and we can see no reason why the secretarial responsibility . . . cannot be exercised by either or both of them.") (emphasis added); *Noguera v. OPM*, 878 F.2d 1422, 1424–25 (Fed.Cir.1989) (paraphrasing 10 U.S.C. § 1552(a) and emphasizing that "a *Board for the Correction of Military Records*, to correct an error in any military record or to remove an injustice and . . . such *correction is final and conclusive*[.]") (emphasis added). In none of these decisions, however, did an executive branch appointed military Secretary take any independent action contrary to the civilian board. They follow, however, well established precedent of the former United States Court of Claims interpreting 10 U.S.C. § 1552(a) to vest final authority over corrections to a civilian board, not an executive branch appointed

military Secretary. *See, e.g., Weiss v. United States*, 187 Ct.Cl. 1, 408 F.2d 416, 421–22 (1969) ("The [Government] argued that the function of the BCNR was merely advisory and thus the Secretary was free to accept or reject its findings as he saw fit. We rejected that position relying on the act creating the BCNR and its legislative history."); *Proper v. United States*, 139 Ct.Cl. 511, 154 F.Supp. 317, 325–26 (1957) ("Since the errors or injustices which might require correction were originally made by the military, Congress made it manifest that correction of these errors and injustices was to be *in the hands of civilians*.") (emphasis added).

The United States Court of Appeals for the Third Circuit also has held that 10 U.S.C. § 1552(a)(1) provides a civilian board rather than an executive branch appointed military Secretary with final authority over corrections:

> The statute establishing military review tribunals explicitly obligates them to act to "remove an injustice," 10 U.S.C. § 1552(a)(1976), a task which necessarily entails an inquiry by the tribunal as to whether the individual has been treated in a manner comporting with traditional notions of fairness. In essence, the military correction boards were established to provide an institutional check on arbitrary action. Before the legislation which authorized creation of administrative boards, Congress itself reviewed military discharges on an ad hoc basis. When Congress determined to change the previously prevailing system, it did so by providing for tribunals with broad, not restricted review power. It need not have done so. It could have, without any constitutional impediment, maintained or perpetuated the practice by which military personnel decisions were the sole prerogative of the commanding officers. Instead, when Congress established civilian boards to review military personnel decisions, it did not provide for boards limited, as the names may erroneously imply, to the clerical function of making technical correction of records of military personnel.

*Neal v. Secretary of Navy*, 639 F.2d 1029, 1042 (3d Cir.1981); *see also Green v. White*,

319 F.3d 560, 563 (3d Cir.2003) ("the claim first accrues when the BCMR 'issue[s] *its final decision*[.]' ") (emphasis added); *Nelson v. Miller,* 373 F.2d 474 (3d Cir.), *cert. denied,* 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980 (1967) ("Although the decision of the BCNR is in the form of a recommendation to the Secretary . . . he may not arbitrarily overrule the recommendations of the Board where its findings are justified by the record[.]"). Other federal appellate courts also have considered civilian boards to be the final authority for military record corrections. *See, e.g., Chandler v. United States Air Force,* 272 F.3d 527, 528 (8th Cir.2001) ("If monetary relief comes about, it will be *solely* because the *Air Force Board for Correction of Military Records decides, in its own discretion,* to grant such relief[.]") (emphasis added); *Henry v. United States Dept. of Navy,* 77 F.3d 271, 272 (8th Cir.1996) ("The BCNR may recommend that the Secretary . . . correct its records *when the BCNR considers such action necessary*[.]") (emphasis added); *Stoneburner v. Secretary of the Army,* 152 F.3d 485, 488 (5th Cir.1998) ("[J]udicial review of the *Board's decision is limited*[.]") (emphasis added); *cf. Acquisto v. United States,* 70 F.3d 1010, n. 1 (8th Cir.1995) ("A federal district court has authority under 10 U.S.C. § 1552 to review the *action of the Air Force Board* in refusing to correct military records[.]") (emphasis added).

In another line of cases, however, the Federal Circuit has held that it is the executive branch appointed military Secretary who has final authority over corrections. For example, in *Selman v. United States,* 723 F.2d 877 (Fed.Cir.1983), our appellate court held that: "There is no requirement that the BCNR *must* take final action in any situation, however. Therefore, it was entirely proper for the BCNR to *merely pass the record to the secretary* so that he could determine the appropriate action . . . the secretary must base *his decision* on the record as the board presents it to him." *Id.* at 880 (emphasis added); *see also id.* at 881 ("*The Secretary* had sufficient evidence before him to have *reached the conclusion* he did reach.") (emphasis added). The clear implication is that the Secretary rather than the BCNR has final correction authority under 10 U.S.C. § 1552(a)(1). *See, e.g., Billinger v. OPM,* 206 F.3d 1404, 1407 (Fed.Cir.2000) (citing *Noguera,* 878 F.2d at 1424 and 10 U.S.C. § 1552(a)(4) (1994)) (as "providing that the correction of a military record *by the Secretary* of a military department is *final and conclusive.*") (emphasis added); *cf. Thomas v. Cheney,* 925 F.2d 1407, 1416–17 (Fed.Cir. 1991) (Newman, J., concurring in part, dissenting in part) ("A decision of a Board for Corrections of Military Records, *when adopted by the Secretary,* 10 U.S.C. § 1552(a), is subject to judicial review.").

In *Miller v. Lehman,* 801 F.2d 492 (D.C.Cir.1986), the United States Court of Appeals for the D.C. Circuit recognized, citing both to *Weiss* and *Proper,* that the decision of a civilian board may be binding upon the Secretary "because of section 1552(a)'s mandate that *the Secretary 'act . . .* through boards of civilians' when correcting military records," but nevertheless held that the Secretary alone had the final authority to make corrections. *Id.* at 497 (emphasis added), *see also id.* ("It must be emphasized that the Secretary is by no means a cipher in the process of correcting naval records. Though section 1552(a) directs the Secretary to act through a civilian board, it leaves no doubt that the *final decision is to be made by him*[.]" (emphasis added)); *see also Lozowski v. Mineta,* 292 F.3d 840, 846 (D.C.Cir.2002) ("*The Secretary is authorized* to correct errors and injustices, *see* 10 U.S.C. § 1552[.]") (emphasis added); *see also Barber v. Widnall,* 78 F.3d 1419, 1423 (9th Cir.1996) ("*[T]he Secretary's decision* to deny . . . section 1552 relief . . . Section 1552 and AFR 31–3 together thus permit the Secretary to reject the recommendation of the Board[.]") (emphasis added).

## 2. Congress Has Established Tests And Standards.

It is well established that the court may review final military service determinations with monetary consequences under the standards set forth by Congress under the Administrative Procedure Act. *See* 5 U.S.C. § 706.

[In] determining whether the ... action was arbitrary, capricious, or in bad faith or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the complainant] has been seriously prejudiced ... The standard in these cases is broadly referred to as the "substantial evidence" rule.

*Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983); *see also Miller*, 801 F.2d at 496 ("'[a military] Secretary's denial of an application for correction of naval records is a final agency action subject to review under the standards of the Administrative Procedure Act.'").

## C. Standard Of Review Regarding An Administrative Record.

A Judgment on the Administrative Record, pursuant to RCFC 56.1, is similar to a motion under RCFC 56 for Summary Judgment; however, they are not identical. The inquiry on a motion for summary judgment is whether the movant has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes judgment. *See Tech Systems, Inc. v. United States*, 50 Fed.Cl. 216, 222 (2001). In contrast, the standard of review on a motion for Judgment on the Administrative Record is narrower, *i.e.*, given all the disputed and undisputed facts, whether the plaintiff has met its burden of proof that a decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *Id.* The standard of review of military service determinations with monetary consequences is "broadly referred to as the 'substantial evidence' rule." *Heisig*, 719 F.2d at 1156.

## D. Resolution Of The Issues In Dispute.

■ Since the court has determined that the Secretary is not authorized by 10 U.S.C. § 1552(a)(1) to reject or modify final decisions of the BCNR and that Congress has established tests and standards to review final military service determinations, plaintiff's claim is justiciable because the complaint has alleged that an Assistant Secretary has acted in a manner that is contrary to law by overruling the BCNR's final decision that plaintiff's discharge was "unfair and should

be set aside." *See* AR at 17; *see also* Compl. at ¶¶ I–XXXVIII.

The Government asserts that the Assistant Secretary's decision in this case is supported by substantial evidence and "in accordance with applicable laws and regulations." *See* Gov't Mot. at 6, 9–17; Gov't Reply at 5–17. The Government also seeks to dismiss plaintiff's due process claims. *See* Gov't Mot. at 18–20; Gov't Reply at 18–19.

Plaintiff counters that the Assistant Secretary's rejection of the BCNR was unsupported by substantial evidence and is arbitrary and/or capricious. *See* Pl. Opp. at 6, 9–11; Pl. Reply at 6–9. In the alternative, plaintiff asks the court to correct "substantive errors" of the BCNR. *See* Pl. Opp. at 14–25; Pl. Reply at 10–15. Finally, plaintiff claims that the process by which his discharge occurred violated the Fifth Amendment to the United States Constitution. *See* Pl. Opp. at 26–28; Pl. Reply at 15.

■ The dispositive issue in this case, however, is whether the BCNR or an executive branch appointed military Secretary or designee has final authority to correct military records under 10 U.S.C. § 1552(a)(1). In *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the United States Supreme Court held that if the words of a statute are clear "that is the end of the matter." In determining the clarity of a statute, the court "relies on a common sense consideration of the words[.]" *Shalala v. Whitecotton*, 514 U.S. 268, 277, 115 S.Ct. 1477, 131 L.Ed.2d 374 (1995) (O'Connor, J., concurring opinion). Only if the statute is "silent or ambiguous" is any further inquiry required. *See Chevron*, 467 U.S. at 843, 104 S.Ct. 2778.

The first sentence of 10 U.S.C. § 1552(a)(1) provides: "The Secretary of a military department *may* correct ... *when* the Secretary considers it necessary to correct an error or remove an injustice." (emphasis added). Congress clearly empowered the Secretary with discretion as to whether a military record may be evaluated for correction. And, Congress intended that such *process* be initiated pursuant to procedures es-

tablished by the Secretary. *See* 10 U.S.C. § 1552(a)(3); 32 C.F.R. § 723.3 (Application for Correction); *cf. Mulloy v. United States,* 398 U.S. 410, 414, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970) ("Though the language is permissive … it does not follow that the [Secretary] may arbitrarily refuse [to perform the act]."). Once an application for correction is submitted to the civilian board, however, Congress limited the discretion of the Secretary in that "such corrections shall be made by the Secretary *acting through* boards of civilians." 10 U.S.C. § 1552(a)(1) (emphasis added). Therefore, the court has determined that Congress delegated final authority under Article I, § 8, cls. 12–14 of the United States Constitution to make such corrections to a civilian board, albeit one whose members are appointed by the Secretary and that functions pursuant to procedural rules established by the Secretary. *See* 32 C.F.R. §§ 723.2–723.11. There is no language in 10 U.S.C. § 1552(a)(1) that authorizes the Secretary to reject or modify a final correction decision of the civilian board. By contrast, in 10 U.S.C. § 1552(a)(2), Congress specifically exempted the Secretary from acting through a civilian board when an enlistment, reenlistment or promotion decision is made. 10 U.S.C. § 1552(a)(1) does not include that exemption.

■ Therefore, the Assistant Secretary's interjection into the process in this case to reverse the BCNR's final decision was contrary to law. Moreover, to the extent that 32 C.F.R. § 723.2(b) attempts to undermine the BCNR's final authority over corrections arising under 10 U.S.C. § 1552(a)(1), that regulation also is contrary to law.[3] The court also has determined that the BCNR's decision to set aside plaintiff's discharge was based on substantial evidence developed during the ADB proceeding. *See Richey,* 322 F.3d at 1326 (recognizing "presumption of regularity that attaches to all administrative actions."); *see also Kidwell v. Dept. of Army,* 56 F.3d 279, 285 (D.C.Cir.

1995) (citing Christopher H. Lunding, *Judicial Review of Military Administrative Discharges,* 83 YALE L.J. 33, 35 (1973) (noting the stigma that flows from a general discharge)).

As to plaintiff's due process claim, it is well established that the court should decline to reach constitutional issues, where a case or controversy may be resolved on other grounds. *See Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 345, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) (quoting *Tull v. United States,* 481 U.S. 412, 417 n. 3, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987)) (requiring that a court "first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided."). Accordingly, the court has not adjudicated plaintiff's due process claims because it has determined that the Assistant Secretary's action was contrary to law and void.

## CONCLUSION

The Government's January 15, 2004 Motion for Judgment on the Agency Record is denied and plaintiff's Cross–Motion is granted, in accord with the terms of the BCNR's October 10, 2002 final decision:

"a. That [plaintiff's] naval record be corrected to show that [plaintiff] was not discharged on 3 February 2000 but continued to serve without interruption on active duty.

b. That the record be further corrected to show that on 11 March 1998, [plaintiff] extended his enlistment for a period of three months.

c. That the record be further corrected to show that [plaintiff] transferred to the Fleet Reserve in the rate of GMG1 on the date he first became eligible for such action.

d. That any material or entries inconsistent with or relating to the [BCNR's] recommendation be corrected, removed or

---

3. 32 C.F.R. § 723.2(b). Function. The Board is not an investigative body. Its function is to consider applications properly before it for the purpose of determining the existence of error or injustice in the naval records of current and former members of the Navy and Marine Corps, *to make recommendations to the Secretary or to take corrective action on the Secretary's behalf when authorized.* (emphasis added). The Board's authority is derived from 10 U.S.C. § 1552(a)(1), not by regulation, which properly may only establish *procedures. See* 10 U.S.C. § 1552(a)(3).

completely expunged from [plaintiff's] record and that no such entries or material be added to the record in the future.

e. That any material directed to be removed from [plaintiff's] naval record be returned to the [BCNR], together with a copy of [the BCNR's] Report of Proceedings, for retention in a confidential file maintained for such purpose, with no cross reference being made a part of [plaintiff's] naval record."

AR at 21–22.

Plaintiff may move for an award of attorney fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(b).

**IT IS SO ORDERED.**