# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 20, 2008

Charles R. Fulbruge III
Clerk

No. 07-60893
Summary Calendar

EDWARD SENU-OKE,

Plaintiff-Appellant,

v.

JACKSON STATE UNIVERSITY; DOCTOR RONALD MASON, JR.; DOCTOR JOSEPH STEVENSON; and DOCTOR VELVELYN B. FOSTER,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi, Jackson Division
USDC No. 3:06-CV-468

Before SMITH, BARKSDALE, and ELROD, Circuit Judges.

PER CURIAM:[*]

Following the termination of his participation in an educational program, Edward Senu-Oke sued under 42 U.S.C. § 1983, claiming due process violations and national origin discrimination. He appeals a summary judgment dismissing his federal claims against the individual defendants: Dr. Ronald Mason, President of Jackson State University ("JSU"); Dr. Joseph Stevenson, founding

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

director of the educational program at issue; and Dr. Velvelyn B. Foster, Vice President for Academic Affairs and Student Life at JSU.[1] We affirm.

BACKGROUND

The basic facts are largely undisputed. Beginning in fall 2004, JSU offered an Executive Ph.D. program ("EPhD") in Urban Higher Education, described as a unique, non-traditional program for professionals who wished to obtain a doctorate degree in higher education. The university had a separate admissions committee for EPhD consisting of representatives from various disciplines involved in the program. EPhD was designed as an accelerated, cohort-based program in which the students would take all of their classes with each other, usually on long weekends once a month over a period of two years. Students were required to complete a dissertation while completing their courses.

Senu-Oke is currently (and was in 2004) the Chair of the Department of Social and Behavioral Sciences at Joliet Junior College in Joliet, Illinois. He is a native citizen of Nigeria. Senu-Oke planned to return to Nigeria in 2006 to campaign for governor of his state, and he thought that a doctorate would be a good credential to obtain. Senu-Oke applied for the EPhD inaugural cohort and was advised in June 2004 that he had been accepted for admission. He signed an EPhD Agreement and made a deposit of $2,000 to hold his place. In August 2004, Senu-Oke arrived at JSU for a week-long orientation. The EPhD orientation included academic modules and lectures on such topics as dissertation methodology.

On the first full day of the orientation, Senu-Oke received a phone call from the chairman of the board of trustees from his college advising him that the president of his college had resigned and that Senu-Oke should return immediately to be considered for the presidency. Senu-Oke left that day without

---

[1] Senu-Oke does not appeal the district court's dismissal of his federal claims against JSU and against the individuals in their official capacities. Likewise, he does not appeal the remand of his Mississippi state law claims for breach of contract and intentional infliction of emotional distress.

successfully contacting Dr. Stevenson or informing other EPhD staff. Dr. Fran Bridges, who was at that time the Pre-Planning Coordinator for the EPhD program, became concerned about Senu-Oke's absence and telephoned his contact numbers the next day to check on him. After Dr. Bridges reached Senu-Oke in his Joliet office, Senu-Oke explained on the phone and in a follow-up email that he had left to attend to a job-related emergency, but he did not explain further. University officials were under the impression that Senu-Oke left to attend a retirement function for the president of his college.

Senu-Oke requested that he be allowed to "go forward and conclude the registration process." His request was denied by telephone and again later in a letter from Dr. Stevenson. The letter to Senu-Oke stated:

> [Y]our absence [from orientation] . . . did not allow you access to the information and experiences shared from the guest lecturers and the cohort, especially with regard to the preparation for the dissertation. You were also absent during registration without arrangements to complete the process. . . .
>
> . . . At this time we are prepared to accept a request from you to be considered for the next cohort. . . . As a good faith effort, we are willing to return your $2,000 deposit minus the hotel charges.

The letter also stated that Senu-Oke's actions breached the EPhD Agreement and "compromise[d] the plan of study as designed." Senu-Oke made further phone calls and sent emails and letters but was not forthcoming about the full reason for his absence. He was told that the decision regarding the current year's EPhD program was final.

Senu-Oke tried to obtain a face-to-face meeting with Dr. Stevenson to explain the situation in person and to plead his case to be part of the inaugural cohort, but Dr. Stevenson declined to meet with him. Eleven months later, Senu-Oke obtained counsel and unsuccessfully tried to obtain a hearing. After he filed a notice of claim in October 2005 pursuant to state law, Senu-Oke finally obtained a meeting with Dr. Stevenson. Senu-Oke offered several proposals that

would enable him to obtain his doctorate by the end of 2006 as he desired, but Dr. Stevenson declined to accommodate his requests. Senu-Oke then met with Dr. Stevenson's boss, Dr. Foster, who ultimately provided the same negative response.

Senu-Oke filed a lawsuit in Mississippi state court, and the defendants removed the case to federal court. The district court held, inter alia, that the individual defendants in their individual capacities were entitled to qualified immunity. Senu-Oke appeals.

## ANALYSIS

Senu-Oke alleges two claims under § 1983: (1) that his right to due process was violated when Dr. Stevenson "dismissed" him from the EPhD program and refused to give him a hearing; and (2) that the defendants discriminated against him on account of his national origin in violation of his equal protection rights.

This court reviews the grant of summary judgement de novo. Ray v. Tandem Computers, Inc., 63 F.3d 429, 433 (5th Cir. 1995). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

## I. Qualified Immunity

Government officials performing discretionary functions are protected from personal liability by the doctrine of qualified immunity "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" McClendon v. City of Columbia, 305 F.3d 314, 322 (5th Cir. 2002) (en banc) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether an official is entitled to qualified immunity from a suit alleging a constitutional violation, we conduct a familiar two-step inquiry. First, we ask whether, considered in the light most favorable to the plaintiff, the plaintiff has alleged facts that, if proven, would establish that the official violated the plaintiff's constitutional rights. Saucier v. Katz, 533 U.S. 194, 201 (2001); Stotter v. Univ. of Tex., 508 F.3d 812, 823 (5th Cir. 2007).

Next, we ask whether the right was clearly established. Saucier, 533 U.S. at 201. Even if a constitutional right may have been violated, the official is entitled to qualified immunity unless the court finds that the official's conduct was objectively unreasonable in light of clearly established law at the time of the state actions at issue. McClendon, 305 F.3d at 323. For a right to be "clearly established" for purposes of qualified immunity, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Johnson v. Johnson, 385 F.3d 503, 524 (5th Cir. 2004) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (internal quotation marks omitted).

If qualified immunity is raised in a motion to dismiss, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" Behrens v. Pelletier, 516 U.S. 299, 309 (1996). "On summary judgment, however, the plaintiff can no longer rest on the pleadings . . . and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the Harlow inquiry." Id. (citation omitted). In the present case, significant discovery occurred prior to summary judgment, and this court's task is to examine the summary judgment record to determine whether Senu-Oke has adduced sufficient evidence to raise a genuine issue of material fact suggesting (1) that the defendants' conduct violated an actual constitutional right; and (2) that the defendants' conduct was objectively unreasonable in light of law that was clearly established at the time of their actions. See McClendon, 305 F.3d at 323.

II. Procedural Due Process Claim

The parties dispute whether Senu-Oke possessed a property interest in continuing in the EPhD program. Although Senu-Oke was accepted to the EPhD program, signed an agreement, and paid a deposit, he left the EPhD orientation prior to completing the process of registration or paying his tuition and fees. He points out that the Mississippi Supreme Court has stated that "the student-

university relationship is contractual in nature." Univ. of Miss. Med. Ctr. v. Hughes, 765 So.2d 528, 535 (Miss. 2000). Senu-Oke claims that he "had a property interest in the form of a contract and that the defendants acted unreasonably in denying him this property interest without adequate due process." His state law claim for breach of contract was remanded to the state courts and remains pending.

Even assuming arguendo that Senu-Oke had a property interest in the EPhD program, it is clear that Senu-Oke was accorded at least as much procedural due process as the Fourteenth Amendment requires. If a public school dismisses a student for "disciplinary reasons," the student is entitled to "an 'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the proper context.'" Bd. of Curators v. Horowitz, 435 U.S. 78, 86 (1978) (finding that the procedural due process accorded had been more than sufficient and did not require a hearing for a student dismissed from medical school for academic cause) (quoting Goss v. Lopez, 419 U.S. 565, 584 (1975)). An academic dismissal, however, "calls for far less stringent procedural requirements" and certainly does not require a formal hearing. Horowitz, 435 U.S. at 86, 88.

Senu-Oke left the university prior to the first full day of EPhD orientation and was thereafter denied the opportunity to return in the middle of orientation, to complete the registration process, and to continue in the program. The orientation was an important part of the cohort's academic program and included information regarding preparation for the dissertation. In a letter, Dr. Stevenson denied Senu-Oke's requests to return because Senu-Oke's absence had "compromise[d] the plan of study as designed." There was no allegation of any misconduct on Senu-Oke's part, and in fact he was invited to apply for the next year's EPhD program. The defendants' decision was clearly made for "academic reasons," and the courts are reluctant to interfere with academic

evaluations, particularly at the higher educational levels. See Horowitz, 435 U.S. at 85 n.2 ("A graduate or professional school is, after all, the best judge of its students' academic performance and their ability to master the required curriculum.").

Senu-Oke claims that "receiving and responding to emails and letters" was not sufficient due process and that he should have been accorded "at least an informal hearing or other direct contact to enable Senu-Oke to explain in detail his reasons for leaving the orientation and to explain why he should be allowed to continue in the program." Senu-Oke is incorrect. He was not entitled to a face-to-face meeting. He had the opportunity to plead his case in writing, and he chose not to be forthcoming about the reason for his absence.[2] At most, Senu-Oke was "dismissed"[3] for academic reasons, which requires a lower level of due process than a dismissal for disciplinary reasons. Even when a student is dismissed for disciplinary reasons, he is not entitled to a formal hearing but only to an "informal give-and-take" with the school to have an "opportunity to characterize his conduct," and Senu-Oke received such an opportunity. See Horowitz, 435 U.S. at 86. No due process violation has been shown.

---

[2] Senu-Oke stated that he did not want to fully explain his departure in writing because of the sensitive nature of the situation, and he claimed a cultural concern about it being "overly presumptuous" to discuss possibly assuming the presidency when it had not been offered to him. He also expressed concern about the potential for his employer learning from emails about his "dismissal" from the EPhD program and drawing negative inferences. Nevertheless, he was given the opportunity to inform the EPhD program of his situation, and it was his choice to wait for a possible in-person meeting to explain the details of his departure. Senu-Oke communicated back and forth with the EPhD program, which made an academic decision that he could not return, and he received more than sufficient due process.

[3] Senu-Oke argues that the district court was incorrect to characterize the events as akin to an "academic dismissal." Because he had not been allowed to register, he claims he was not a student and could not be "dismissed" from anything. He argues, without citing legal authority, that he was deprived of his property interest not by a "dismissal" but by the defendants' refusal to honor the contract between Senu-Oke and the EPhD program by allowing Senu-Oke to register and continue in the program. Regardless, Senu-Oke received sufficient procedural due process.

We have considered the summary judgment record in the light most favorable to the plaintiff, and Senu-Oke has not raised a genuine issue of material fact regarding the existence of a due process violation. The summary judgment motion was properly granted.

III. Discrimination Claim

Defendants' summary judgment motion also argued that Senu-Oke proffered no evidence, direct or circumstantial, that they discriminated against him because of his Nigerian descent. To prevail on their motion, the defendants were not required to "prove a negative . . . on an issue that the plaintiff must prove at trial. [They] need[ed] only [to] point to an absence of proof on plaintiff's part and, at that point, plaintiff [had to] designate specific facts showing . . . a genuine issue for trial." Parker v. Sony Pictures Entm't, 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)) (internal quotation marks omitted). Senu-Oke could not do so.

In support of his discrimination claim, Senu-Oke can point only to evidence that (1) he was the only foreign national admitted to the program during its first three years; (2) he was dismissed or refused admission because he missed the first two days of orientation; and (3) none of the other students in the EPhD program was dismissed even though some of them missed classes (but not the orientation). Senu-Oke did not demonstrate that he was treated differently from any other similarly situated individual, and his unsupported opinion that he was discriminated against does not constitute evidence of the defendants' intent. See Ray, 63 F.3d at 435 (stating that "bald assertions of . . . discrimination are inadequate to permit a finding that proscribed discrimination motivated [the defendant's] actions against [the plaintiff]"). Senu-Oke's evidence does not raise a genuine issue of material fact as to whether the defendants intentionally discriminated against him based on his national origin. Accordingly, the district court properly granted summary judgment.

CONCLUSION

Finding no error in the district court's ruling, we AFFIRM.