# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 10, 2013

No. 12-50149

Lyle W. Cayce
Clerk

TATE SMITH,

Plaintiff - Appellee

v.

DESSIE DAVIS,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:11-CV-95

Before BARKSDALE, DENNIS, and GRAVES, Circuit Judges.

PER CURIAM:[*]

In this interlocutory appeal, Dessie Davis contests the denial of qualified immunity against a due-process claim. That defense was presented in her motion to dismiss Tate Smith's amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) (failure to state claim). That operative complaint claimed, *inter alia*, violation of due process under the Fourteenth Amendment. Because Davis is entitled to such immunity for that claim, its denial is

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50149

REVERSED; on REMAND, the due-process claim against Davis is to be dismissed.

## I.

In addition to Davis, Odessa College, in Odessa, Texas, is a defendant. The following factual statements are in Smith's amended complaint.

In the summer of 2009, Smith enrolled in an introductory English course, taught by Davis, at the college. Davis knew Smith was a football-scholarship athlete at the University of New Mexico. He needed a passing grade in Davis' class to maintain his scholarship and compete in the 2009 football season.

By 5 August 2009, Smith submitted to Davis a required research essay, using Odessa College's computer system: Blackboard. At 9:06 a.m. on 5 August, Davis e-mailed Smith that she could not open the file due to the file type; he was instructed: "[R]eread the instructions for the assignment. If you want to turn it [in] by 5pm today, email me a request to clear this submission. The highest grade possible will be a 70." At 2:43 p.m. that day, Smith e-mailed Davis his paper. She replied at 3:29 p.m.: "Do not email me your essay; if you would like to submit it via Blackboard, let me know and I will clear your first attempt." Very early the next day, at 12:17 a.m., Smith e-mailed Davis to apologize for misunderstanding, and requested permission to re-submit. Davis replied that afternoon at 12:38 p.m.: "I am not re-opening the assignment in Blackboard. I will decide what to do with the emailed copy."

Davis reduced Smith's assignment-grade because she deemed the paper late, which resulted in Smith's failing the class. Smith filed a grievance through the college's appeal procedure. The appeals committee conducted a hearing in October 2009, and subsequently denied the appeal.

No. 12-50149

In August 2011, Smith filed this action in state court against Davis and Odessa Junior College District d/b/a Odessa College, claiming: (1) violation of due process under the Fourteenth Amendment; and (2) breach of contract under state law. Following removal to federal court, the college moved to dismiss, pursuant to Rule 12(b)(1), for lack of subject-matter jurisdiction. It and Davis also moved to dismiss, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted. The district court denied the motions without prejudice and, *sua sponte*, ordered Smith to re-plead. In his amended complaint, he alleged defendants' actions caused him, *inter alia*: loss of income for the payment of tuition, fees, and college expenses at the University of New Mexico; mental anguish and pain and suffering from being unable to play football at that university during the 2009 season; and loss of potential earnings through a professional football contract.

The college again moved to dismiss, pursuant to Rule 12(b)(1). It and Davis also again moved to dismiss, pursuant to Rule 12(b)(6). In doing so, Davis again claimed qualified immunity against the due-process claim.

In February 2012, the district court dismissed Smith's breach-of-contract claim against defendants, but denied dismissal of the due-process claim. In doing so, the court referenced, but did not address, Davis' qualified-immunity defense. *Smith v. Odessa Junior Coll. Dist., et al.*, No. MO-11-CV-095 (W.D. Tex. 11 Feb. 2012).

## II.

At issue in this interlocutory appeal is only whether Davis is entitled to qualified immunity against the due-process claim that remains pending in this action. (Again, the court dismissed the breach-of-contract claim against Davis

3

and the college.)  The denial of qualified immunity, to the extent it turns on an issue of law, is appealable as a "final decision" pursuant to 28 U.S.C. § 1291, "notwithstanding the absence of a final judgment". *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

The court's not awarding qualified immunity to Davis against the due-process claim, pursuant to her Rule 12(b)(6) motion, is reviewed *de novo*. *E.g.*, *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc).  "In so doing, we must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the nonmoving party." *Id.*  On the other hand, Smith has the burden of demonstrating inapplicability of such immunity.  *E.g.*, *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012).

The purpose of the qualified-immunity doctrine is to shield government officials not only from personal liability, but from suit as well, "when their actions could reasonably have been believed to be legal".  *Morgan*, 659 F.3d at 370-71; *see Mitchell*, 472 U.S. at 526 ("The entitlement is an *immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial.") (emphasis in original).  In that regard, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*".  *Pasco v. Knoblauch*, 566 F.3d 572, 578-79 (5th Cir. 2009) (internal quotation marks and citation omitted) (emphasis in original). This standard protects the balance between upholding constitutional or statutory rights and ensuring government officials can effectively perform their duties, by

No. 12-50149

"reasonably [] anticipat[ing] when their conduct may give rise to liability". *Davis v. Scherer*, 468 U.S. 183, 195 (1984).

Therefore, a government official's personal liability for a claimed unlawful action turns on the "'objective legal reasonableness' of the action, assessed in [the] light of the legal rules that were 'clearly established' at the time it was taken". *Shaboon v. Duncan*, 252 F.3d 722, 728-29 (5th Cir. 2001) (*quoting Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). To defeat the qualified immunity asserted in the Rule 12(b)(6) motion, Smith must show: (1) he stated well-pleaded facts that Davis did not provide due process under the Fourteenth Amendment; and (2) her challenged conduct was objectively unreasonable in the light of *clearly established law* at the time of that conduct. *E.g.*, *Morgan*, 659 F.3d at 371; *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008).

Courts have discretion to decide which of these two prongs to address first, in the light of the particular circumstances. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). First reviewing the second prong (objectively unreasonable conduct *vel non*) is often preferable, as it "comports with [the] usual reluctance to decide constitutional questions unnecessarily". *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (citation omitted).

To satisfy the second prong, Smith "must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity". *Morgan*, 659 F.3d at 371-72 (internal quotation marks and citations omitted). "Where no controlling authority specifically prohibits a defendant's conduct[,] . . . the law cannot be said to be clearly established. . . . [G]eneralizations and abstract propositions are not capable of clearly establishing the law". *Id.* at 372. While

5

No. 12-50149

there need not be a decision directly on point, "existing precedent must have placed the statutory or constitutional question *beyond debate*". *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (emphasis added).

Davis asserts Smith fails to satisfy the second prong because, when Davis assigned Smith's grade, it was not clearly established he had a property or liberty interest in the outcome of a dispute concerning it. In response, Smith asserts: Davis arbitrarily treated Smith's paper as tardy when he timely filed it on Blackboard; and, therefore, such treatment was objectively unreasonable. He also contends this treatment constituted a violation of due process under the Fourteenth Amendment.

The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law". U.S. Const. amend. XIV, § 1. "To be entitled to the procedural protections of the Fourteenth Amendment", Smith must demonstrate he was "deprived [] of either a 'liberty' or a 'property' interest". *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82 (1978). For example, property interests are created, and their dimensions defined, "by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits". *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Smith claims he had a property interest in: the summer 2009 English course; the grade he received in it; and obtaining a four-year education. He claims a liberty interest in: his good name; his reputation; and continuing to play football for the University of New Mexico.

No. 12-50149

Most case law involving due process in the educational setting concerns student dismissals or suspensions from academic institutions. In such circumstances, the Supreme Court has held students are afforded limited due-process protections, in the form of "an 'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the proper context'". *Horowitz*, 435 U.S. at 86 (*quoting Goss v. Lopez*, 419 U.S. 565, 584 (1975)). The Court also recognized there is a "significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct[,] . . . [which] calls for far less stringent procedural requirements in the case of an academic dismissal". *Id.*

The Court has not held college academic decisions implicate property or liberty interests, entitling a student to constitutional due-process protections. Accordingly, our court has followed suit. For example, to the extent our court has addressed this issue, it has held a student who is not denied access to public education does not have a property or liberty interest implicated. *E.g.*, *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997) (no property or liberty interest implicated in transfer from one school program to another with stricter discipline because student never denied access to public education, even temporarily, such as through suspension or expulsion); *cf. Goss*, 419 U.S. at 576 (student's "total exclusion from the educational process for more than a trivial period" triggers possible violation of property or liberty interest). We have "also rejected arguments that there is any protected interest in the *separate components* of the educational process". *Nevares*, 111 F.3d at 27 (emphasis added); *e.g.*, *Jeffrey v. Bd. of Trustees of Bells ISD*, 261 F. Supp. 2d

7

No. 12-50149

719, 726 (E.D. Tex. 2003) (no property interest in right to take high-school Spanish course at different time; "it is only when a student is excluded from the entire educational system that due process must be afforded"), *aff'd*, 96 F. App'x 248 (5th Cir. 2004) (per curium).  Other circuits have been similarly cautious. *E.g.*, *Hennessy v. City of Melrose*, 194 F.3d 237, 249-52 (1st Cir. 1999) (because Supreme Court has not decided whether university student has constitutionally-protected property interest in continued enrollment, court assumed interest and held no violation because hearing not required for academic sanctions); *Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1184 (10th Cir. 2000) (no due-process violation because hearing not required for academic sanctions); *Schuler v. Univ. of Minn.*, 788 F.2d 510, 514 (8th Cir. 1986) (full procedural safeguards of Fourteenth Amendment inapplicable where student dismissed from state university for academic reasons).  Smith has neither alleged denial of access to an education, even on a temporary basis, nor placed in legitimate doubt the academic nature of Davis' actions.

Rather than determine whether a student has a particular property or liberty interest, the common practice has been the above-discussed constitutional avoidance, comporting with the "usual reluctance to decide constitutional questions unnecessarily".  *Reichle*, 132 S. Ct. at 2093 (citation omitted); *see, e.g.*, *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 223 (1985) (assumed property or liberty interest in continued enrollment); *Davis v. Mann*, 882 F.2d 967, 973 (5th Cir. 1989) (declined to decide whether plaintiff had liberty or property interest in residency program); *Mahavongsanan v. Hall*, 529 F.2d 448, 449-50 (5th Cir. 1976) ("[W]e know of no case which holds that colleges and universities are subject to the supervision or review of the courts in the uniform

No. 12-50149

application of their academic standards".) (*quoting Wright v. Tex. S. Univ.*, 392 F.2d 728, 729 (5th Cir. 1968)) (internal quotation marks omitted).

As stated, for our analysis of the second prong of the qualified-immunity test, the objective reasonableness of Davis' actions must be viewed in the light of then clearly-established law. Needless to say, the law was *not* clearly established. The limited case law related to the matter, discussed above, does not "truly compel . . . the conclusion for every like-situated, reasonable government agent that what [Davis has allegedly done] violates [constitutional due process] *in the circumstances*". *Pasco*, 566 F.3d at 578-79 (citation omitted) (emphasis in original). In short, Smith's asserted property or liberty interests were not established "beyond debate"; therefore, Davis is entitled to qualified immunity. *Ashcroft*, 131 S. Ct. at 2083.

## III.

For the foregoing reasons, the denial of qualified immunity to Davis against the due-process claim is REVERSED; on REMAND, that claim against Davis is to be dismissed.