# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-40081

United States Court of Appeals
Fifth Circuit

**FILED**
November 3, 2014

Lyle W. Cayce
Clerk

MARIA ELENA PEREZ,

Plaintiff – Appellant,

v.

TEXAS A & M UNIVERSITY AT CORPUS CHRISTI; RACHEL A. MILLER ROBERGE, Individually and in her Official Capacity; JULIE SCHWEIN FOMENKO, Individually and in her Official Capacity; MARY JANE DEAN HAMILTON, Individually and in her Official Capacity,

Defendants – Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:13-cv-225

Before STEWART, Chief Judge, and JONES and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Maria Elena Perez sued Texas A&M University, Corpus Christi and its employees, Rachel A. Miller Roberge, Julie Schwein Fomenko, and Mary Jane Dean Hamilton, over her dismissal from a nursing program. On appeal, Perez challenges the district court's judgment dismissing

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-40081

her claims, brought pursuant to 42 U.S.C. § 1983, that Defendants violated her rights to procedural and substantive due process under the Fifth and Fourteenth Amendments.  For the reasons herein, we AFFIRM.

## I.     FACTS & PROCEDURAL BACKGROUND

Plaintiff-appellant Maria Elena Perez was a nursing student at Texas A&M University, Corpus Christi ("the University") from January 2011 until she was dismissed in April 2012.  In Fall Semester of 2011, Perez completed coursework and a clinical rotation in her "Med Surge II" course but failed the course after receiving an exam grade average below 75.  After failing the course the first time, Perez was required to retake both the classroom and clinical portions of the course, so she again enrolled in Med Surge II in the Spring Semester of 2012.  According to course policy, in addition to receiving an exam grade average below 75, students could also fail the course by receiving three warnings during the semester.

Perez received her first warning on February 20, 2012, from instructor Julie Schwein Fomenko.  The warning, which is included with and referred to in Perez's complaint, states: "Student has not completed and uploaded Hospital Orientation which was due 1/27/2012.[1]  Failure to complete these modules by 2/22/2012 will result in removal from current clinical rotation and inability to begin clinical rotation for [Med Surge II]."  Perez acknowledges that she did not complete the Hospital Orientation by January 27, 2012.  She alleges, however, that: (1) because her rotation was in an elementary school setting, she was not required to complete the Hospital Orientation; (2) the class syllabus and student handbook do not state a January 27, 2012 deadline; (3) other students had also not timely taken the orientation; and (4) "common

---

[1] The correct date of "1/27/2012" is written by hand over the date "2/27/2012" and the correction is initialed.

2

sense" dictates that the orientation was not required to be completed until the start of her clinical rotation, which was March 2, 2012. The course syllabus states that students are required to complete the Hospital Orientation and does not exempt students participating in non-hospital clinical rotations.

Perez received her second warning on April 12, 2012, from instructor Rachel A. Miller Roberge for being late for her clinical rotation and for failing to submit a care plan according to class guidelines. Perez acknowledges that she was fifty-five minutes late to her clinical rotation. She alleges, however, that: (1) she was unaware of the starting time for her clinical rotation because she had been in court the prior day on a custody matter and "did not think about checking the schedule"; (2) she attempted to make up the missed time by skipping her lunch break; and (3) another student who was thirty minutes late on the same day did not receive a warning. Perez also admits that the care plan she originally submitted lacked several required categories. She notes, however, that this occurred because she used the form for care plans from the Fall 2011 Med Surge II class and that, after her third attempt to write her care plan (her second attempt was also unsatisfactory), she earned a passing grade on the assignment.

Perez received her third and final warning from Roberge on April 20, 2012, for: (1) failing to correctly identify a patient's blood pressure condition; (2) failing to give a patient a full dosage of an injection; (3) failing to identify which condition another patient's medication treated; and (4) failing to identify the reason why that second patient had been hospitalized. Perez concedes that the factual bases for the third warning are true but provides several explanations for her actions. Perez submits that she was not sure about the patient's blood pressure condition because she "was not given a chance to prepare to give the morning medications." She states that she made an "honest

mistake" as to the dosage of an injection because Roberge made her "nervous and distracted" when she did not have this information.  She further states that she did not know what condition the patient's medication treated because "it was very difficult to gather her thoughts under such stressful situation and because [she] had not worked with that patient much."  Finally, Perez explains that instead of providing her with a third warning, Roberge should have used the skills remediation option available according to the official Nursing Student Handbook.

Because Perez received three warnings, she again failed the Med Surge II course and was automatically dismissed from the University's nursing program.  Perez requested a reinstatement, which the Nursing School denied.  Perez then appealed her dismissal to the University.  The University held three separate hearings on her appeal.  Perez was not present at the first hearing.  Perez states that at the second hearing she "had counsel present" and "had an opportunity to plead her case."  Neither Perez nor her counsel was present during the third hearing at which Fomenko testified.  Shortly after the third hearing, the University denied Perez's appeal.

Perez filed the present suit in federal district court, asserting a variety of federal and state law claims against the University, Roberge, Fomenko, and Mary Jane Dean Hamilton (collectively, "Defendants").[2]  The district court dismissed these claims under Federal Rule of Civil Procedure 12(b)(1) and (6).  On appeal, Perez challenges the dismissal of her claims, brought pursuant to 42 U.S.C. § 1983, that Defendants violated her rights to procedural and

---

[2] Perez's complaint does not contain any allegations related to Hamilton.  Because Perez fails to plead Hamilton's role in her expulsion, we affirm the district court's dismissal of Perez's claims against Hamilton.

substantive due process under the Fifth and Fourteenth Amendments of the United States Constitution.[3]

## II.   STANDARD OF REVIEW

"The grant of a motion to dismiss based upon qualified immunity is reviewed de novo." *Williams-Boldware v. Denton Cnty., Tex.*, 741 F.3d 635, 643 (5th Cir. 2014) (citation omitted).

## III.   DISCUSSION

In deciding whether a defendant is entitled to qualified immunity, we apply a two-step analysis in which we consider: (1) "whether a constitutional right would have been violated on the facts alleged," and, if a violation is established, (2) "whether the right was clearly established" at the time of violation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (citation omitted). The plaintiff bears the burden "to prove that a government official is not entitled to qualified immunity." *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013).

Because Defendants sought qualified immunity in a motion to dismiss under Rule 12(b)(6), we accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam) (citation omitted). "One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citation omitted). Accordingly, before permitting discovery, a court must first find "that the plaintiff's pleadings assert facts which, if true,

---

[3] Perez does not appeal the dismissal of her claims under the Equal Protection Clause of the Fourteenth Amendment, the Due Course of Law and Equal Rights Clauses of the Texas Constitution, or the Texas Civil Rights Act, or her claims for breach of contract, defamation, or intentional infliction of emotional distress. Perez also does not challenge the dismissal of her § 1983 claims against the University and against the individual defendants in their official capacity. To the extent that Perez intended to appeal the dismissal of these claims, we hold that they are waived for inadequate briefing. *See United States v. Whitfield*, 590 F.3d 325, 346 (5th Cir. 2009).

would overcome" a qualified immunity defense. *Id.* (internal quotation marks and citation omitted).

We first address Perez's procedural due process claim and then turn to her substantive due process claim. Because we conclude that Perez has failed to survive the first prong of the qualified immunity analysis by alleging facts that, if true, plausibly support her claims that her rights to procedural and substantive due process were violated, we do not reach the second prong of the analysis.

*A. Procedural Due Process*

The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.[4] "To be entitled to the procedural protections of the Fourteenth Amendment, [Perez] must . . . demonstrate that her dismissal from the school deprived her of either a 'liberty' or a 'property' interest." *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82 (1978). Neither the Supreme Court nor our circuit has decided whether students have a liberty or property interest in public higher education. *See Smith v. Davis*, 507 F. App'x 359, 362 (5th Cir. 2013) (per curiam) (unpublished) ("The [Supreme] Court has not held college academic decisions implicate property or liberty interests, entitling a student to constitutional due-process protections. Accordingly, our court has followed suit."). Defendants did not address this issue before the district court. Thus, we assume, without deciding, for the purposes of our analysis herein that Perez had protected property and liberty interests and look to what procedural protections she was due. *Id.*

---

[4] Perez also asserts that Defendants violated her due process rights under the Fifth Amendment. The Fifth Amendment's Due Process Clause, however, applies only to actions of the federal government, and the University is a state institution. *See Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).

No. 14-40081

In *Horowitz*, the Supreme Court held that procedural due process protections may vary depending on whether a university's dismissal is motivated by "disciplinary" or "academic" reasons. 435 U.S. at 86. If a public university dismisses a student for "disciplinary reasons," the student is not entitled to a formal hearing but instead to "an 'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the proper context.'" *Id.* (quoting *Goss v. Lopez*, 419 U.S. 565, 584 (1975)). An academic dismissal, however, "calls for far less stringent procedural requirements," *id.*, and "certainly does not require a formal hearing." *Cf. Senu-Oke v. Jackson State Univ.*, 283 F. App'x 236, 239 (5th Cir. 2008) (per curiam) (unpublished). "[T]he determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Horowitz*, 435 U.S. at 90.

Perez first argues that the district court erred in characterizing her dismissal as academic. We disagree. The record reflects that Perez's dismissal was academic because it "rested on the academic judgment of school officials that she did not have the necessary clinical ability to perform adequately as a [nurse] and was making insufficient progress toward that goal." *Id.* at 89–90. Further, Perez concedes that her dismissal was based on the fact that she initially failed the Med Surge II course by receiving an exam grade average below 75 and, after retaking the course, she failed a second time because she exhibited a pattern of submitting work that was late, incomplete, or otherwise

7

deficient, missed nearly an hour of her clinical rotation, and made multiple mistakes while treating patients.[5]

Perez contends that her second warning was issued, in part, because she was late for her clinical rotation and contends that tardiness is a disciplinary issue. Courts have frequently concluded, however, that absences and tardiness in the higher education context may relate to a student's ability to perform academically and professionally. *See Horowitz*, 435 U.S. at 91 n.6 ("[T]imeliness may be as important [of a] factor in a school's determination of whether a student will make a good medical doctor as the student's ability to take a case history or diagnose an illness."); *Senu-Oke*, 283 F. App'x at 240 (characterizing a student's absence during the first day of orientation and registration for an advanced degree program as "academic" because "[t]he orientation was an important part of the cohort's academic program and included information regarding preparation for the dissertation"). Indeed, the Med Surge II course syllabus, which Perez attached to and referenced in her complaint, provides that "[s]tudents in a professional nursing program must function with the legal, moral, and ethical standards of the profession" and that such standards "guide practice." Clinical attendance is listed among the applicable professional standards. Accordingly, the record supports the district court's conclusion that Perez's dismissal was academic in nature.

When a student is dismissed for academic reasons from a state institution of higher education, procedural due process under the Fourteenth Amendment requires only that the student be "informed" of the "faculty's dissatisfaction with her clinical progress" and that the school's ultimate

---

[5] Perez argues that because she received course feedback in the form of a "warning," rather than through a grade deduction, Defendants' reasons for failing her must have been disciplinary. The applicable case law does not support such a narrow interpretation of what is considered "academic" decisionmaking. *See, e.g.*, *Horowitz*, 435 U.S. at 91 n.6; *Senu-Oke*, 283 F. App'x at 240.

decision to dismiss her be "careful and deliberate." *See Horowitz*, 435 U.S. at 85. Perez acknowledges that she was aware of her unsatisfactory academic status. Perez knew from the course syllabus that she was required to obtain a minimum average exam score of 75 in order to pass the course and also knew that, if she failed to do so, she would have to retake the course. Perez also knew from her course syllabus that her receipt of three warnings in the course would "lead to failure of the clinical rotation and therefore, failure of the entire course" and that there were "[o]ther offenses, which depending on severity, may lead to immediate failure of the course." The offenses that could lead to immediate failure included "a pattern of lack of accountability for class, clinical and lab skills preparation, [and] unsafe or unprofessional practices or behaviors"—all behaviors about which Perez received warnings. Perez was given written notices explaining the basis for each warning she received. Finally, even after she was dismissed, Perez had the opportunity to apply for reinstatement and to file an appeal. Perez took advantage of both opportunities and provided written and in-person testimony in support of her appeal. *Senu-Oke*, 283 F. App'x at 240 (stating that an individual dismissed for academic reasons was not entitled to a face-to-face meeting).

Accepting Perez's allegations as true and viewing those allegations in the light most favorable to her, *see Stokes*, 498 F.3d at 484, we nevertheless conclude that the University provided Perez with adequate notice of her poor academic status and used a careful and deliberate process in dismissing her. *See Horowitz*, 435 U.S. at 85. Consequently, we affirm the district court's dismissal of Perez's procedural due process claims. *Id.*

B. *Substantive Due Process*

Next, Perez argues that her dismissal violated her substantive due process rights. In *Ewing*, the Supreme Court stated that "[w]hen judges are

asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985). Universities are "uniquely positioned to observe [a student's] judgment, self-discipline, and ability to handle stress, and . . . thus especially well situated to make the necessary subjective judgment of [her] prospects for success in [her chosen] profession." *Id.* at 228 n.14; *see also Horowitz*, 435 U.S. at 92 ("Courts are particularly ill-equipped to evaluate academic performance."). Courts may not override an academic decision "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Ewing*, 474 U.S. at 225.

Perez has failed to allege facts that, taken as true, demonstrate that Defendants violated her right to substantive due process. Perez offers a variety of explanations for her actions but does not dispute the majority of the factual bases that Defendants provided for her dismissal. Perez acknowledges that, when she first took her Med Surge II course, she did not receive the minimum exam grade average required to pass the course. She further acknowledges that, when she retook the course, she did not complete her Hospital Orientation to her instructor's satisfaction, showed up nearly an hour late to her clinical rotation, failed to submit a care plan according to class guidelines, incorrectly identified a patient's blood pressure condition, failed to give a patient a full dosage of an injection, and failed to identify the reasons for another patient's medication and hospitalization.

In light of these facts, we cannot say that Perez's dismissal was so substantial a departure from accepted academic norms as to demonstrate that

No. 14-40081

Defendants did not actually exercise professional judgment.  *See Id.* at 225.[6]
Accordingly, we also affirm the district court's dismissal of Perez's substantive
due process claims.

## IV.    CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.

---

[6] Perez also alleges that Fomenko made multiple false statements at the third appeal
hearing and contends that these statements affected the University's denial of her appeal.
As previously discussed, however, Perez did not have a constitutional right to a formal
hearing on her academic dismissal, and she fails to explain how statements made at a hearing
not mandated by due process nonetheless implicate her due process rights.  *See Horowitz*,
435 U.S. at 85-86.