# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 16, 2024

Lyle W. Cayce
Clerk

No. 23-10764

———————————

John Doe,

*Plaintiff—Appellant*,

*versus*

University of North Texas Health Science Center;
Doctor Frank Filipetto, *in his official capacity and in his individual/personal capacity*; Doctor Emily Mire, *in her official capacity and in her individual/personal capacity*; Doctor Thomas Moorman, *in his official capacity in his individual/personal capacity*,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:21-CV-658

———————————————————————

Before Jolly, Smith, and Haynes, *Circuit Judges*.

Per Curiam:[*]

John Doe enrolled in the Texas College of Osteopathic Medicine ("TCOM") with the hope of becoming a doctor. Three years into his studies, he took a medical leave of absence. When he failed to satisfy the

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

conditions for his return, TCOM dismissed him from the program. Doe subsequently filed three lawsuits—two in Texas state court and this one in federal court—related to his dismissal from TCOM. In this suit, Doe asserted claims against the University of North Texas Health Science Center ("UNTHSC" or the "University"),[1] Dr. Frank Filipetto, Dr. Emily Mire, and Dr. Thomas Moorman, both in their respective official capacities (the "official capacity defendants") and in their individual capacities (the "individual capacity defendants"). The district court dismissed his claims against the University and the official capacity defendants because the claims are barred by res judicata. Then, the district court granted summary judgment in favor of the individual capacity defendants and dismissed Doe's complaint. We AFFIRM.

I.

John Doe enrolled in TCOM in the fall of 2013. He completed his first three years of medical school without issue. But then, in his fourth year, Doe developed insomnia from sleep apnea and became exhausted, depressed, and apathetic towards school. Doe stopped responding to emails and apparently experienced difficulties with administration completing his paperwork to complete required rotations. TCOM initiated a "CARE Team referral report" to Dr. Emily Mire about Doe's mental health and well-being, and Dr. Mire met with Doe to discuss the issues.

Because Doe was missing critical deadlines and not responding to emails, he was required to meet with TCOM's Student Performance Committee ("SPC"). In preparation for the SPC meeting, Doe submitted a written statement to the committee. The SPC meeting was held in early

---

[1] TCOM is part of the University.

November 2016, and Doe attended the meeting and read his statement to the committee.

At the meeting, the SPC granted Doe's request for a medical leave of absence. After the meeting, Dr. Mire—a nonvoting member of the committee—informed Doe of the SPC's approval and gave him the paperwork for his medical leave of absence. On the form for his medical leave of absence, Doe provided his personal email address, and the UNTHSC Registrar's Office emailed him at that email address to confirm his medical leave of absence.

The SPC committee also required that Doe must comply with the following requirements by May 1, 2017, in order to return: (1) notify the Registrar's Office of his intent to return; (2) submit documentation that his medical issues are resolved and that he is fit to resume the program; (3) have a passing score on COMLEX2CE exam; and (4) discontinue the unprofessional behavior. Senior Associate Dean Frank Filipetto prepared a letter outlining the SPC's decision and the conditions that Doe needed to meet in order to return in the Fall (the "Filipetto Letter"). The Filipetto Letter contained all of the requirements that Doe must meet to return to school in July 2017. Dr. Filipetto met with Doe on November 3, 2016, and allegedly hand-delivered the letter to him. Doe does not contest meeting with Dr. Filipetto, but he denies ever receiving this letter.

Doe's leave of absence was effective immediately following the SPC meeting. During this time, Doe was treated for sleep apnea. But Doe did not comply with the May 1, 2017, deadlines. Instead, Doe waited until June 2017 to register for the COMLEX2CE exam. Doe had also received verbal clearance from his doctor but was still waiting to receive written clearance before informing the school of his decision to return. Additionally, Doe was

still checking his official university email account during the leave. But by July 2017, he had stopped checking it.

On July 10, 2017, Dr. Filipetto emailed Doe—at his university email address—to inform him that because he failed to meet the May 1, 2017, deadlines, action would be taken at the next SPC meeting (the "July 10 Notice"). Then, on July 17, 2017, the SPC emailed Doe to inform him that he was scheduled to appear at the SPC meeting on July 25 (the "July 17 Notice"). The notice informed Doe that he failed to meet the requirements set forth in the SPC letter dated November 1, 2016, (the Filipetto Letter) and requested a written statement from him. Doe did not submit a written statement nor did he attend the SPC meeting on July 25.

At the July 25 meeting, the SPC unanimously voted to dismiss Doe from the program. The SPC drafted a letter dated July 25, 2017, that informed Doe of the SPC's decision to dismiss him and his options for filing an appeal (the "July 25 Notice"). Following the meeting, Dr. Mire called Doe to discuss his failure to appear at the meeting and to set up a meeting with Doe and Dr. Thomas Moorman, former UNTHSC Vice President for Student Affairs. Dr. Moorman met with Doe to hand deliver the July 25 Notice.

Doe appealed the SPC's decision. On July 31, 2017, he submitted a written appeal to Dr. Filipetto. In the appeal, Doe never claimed that he did not receive the Filipetto Letter, but he did explain that he was waiting for a passing score on his COMLEX2CE before informing the school of his intent to return. Dr. Filipetto met with Doe the next day to discuss his appeal. Then, on August 3, 2017, Dr. Filipetto emailed to Doe to inform him that his appeal was denied.

Following his dismissal from TCOM, Doe filed two lawsuits in Texas state court alleging that UNTHSC and Dr. Filipetto deprived him of due

process when they dismissed him from TCOM. His first state court lawsuit was non-suited on September 10, 2018. Doe then filed a second state court lawsuit that proceeded to a decision on the merits. *Doe v. Univ. of N. Tex. Health Sci. Ctr.*, No. 02-19-00321-CV, 2020 WL 1646750 (Tex. App. Apr. 2, 2020), *review denied* (Apr. 16, 2021), *pet. for reh'g denied* (July 23, 2021) ("*Doe I*"). During discovery in this state lawsuit, defendants produced the Filipetto Letter, which Doe maintains is the first time he saw the letter. The 153rd Judicial District Court dismissed the claim, the Second District Court of Appeals affirmed, and the Supreme Court of Texas denied Doe's petition for review and petition for rehearing. *Id.* at *1.

Following the dismissal of his state court suit, Doe filed the present lawsuit on May 14, 2021. In this suit, he alleged that the individual capacity defendants (Drs. Filipetto, Mire, and Moorman) conspired to have him expelled from TCOM. Doe asserted several claims: a "regarded as disabled" claim and an intentional disability discrimination claim under the Rehabilitation Act of 1973; an equal protection claim under the Fourteenth Amendment; a due process claim under the Fifth and Fourteenth Amendments; a disability discrimination claim under the Americans with Disabilities Act; and a fraud claim.

Defendants responded with a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In ruling on that motion, the district court dismissed Doe's claims against UNTHSC and the official capacity defendants because those claims were barred by res judicata. The district court, however, declined to dismiss Doe's constitutional claims against the individual capacity defendants, finding that Doe pled enough facts to state a claim for relief and overcome qualified immunity. The district court nonetheless dismissed Doe's fraud claims against the individual capacity defendants because the individual capacity defendants have immunity under the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code §

101.106(f).  After the district court issued this ruling, all that remained were Doe's constitutional claims against the individual capacity defendants.

The lawsuit proceeded to discovery on the remaining claims. Following discovery, the individual capacity defendants moved for summary judgment.  The district court granted the motion for summary judgment, finding that Doe failed to establish a genuine dispute of material fact as to whether the individual capacity defendants violated Doe's constitutional rights to due process and equal protection.  Doe filed a motion to alter or amend the judgment, which the district court denied.  This appeal timely followed.

## II.

As we have noted, the district court dismissed Doe's claims against UNTHSC and the official capacity defendants pursuant to FED. R. CIV. P. 12(b)(6).  We review dismissals under Rule 12(b)(6) *de novo*.  *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570–71 (5th Cir. 2005). Although res judicata generally must be raised as an affirmative defense, "dismissal under Rule 12(b)(6) is appropriate if the res judicata bar is apparent from the complaint and judicially noticed facts and the plaintiff fails to challenge the defendant's failure to plead it as an affirmative defense." *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020) (quoting *Singh*, 428 F.3d at 570 n. 2 (internal quotations omitted)).  "The res judicata effect of a prior judgment is a question of law that this court reviews *de novo*."  *Singh*, 428 F.3d at 571.

The district court granted summary judgment in favor of the individual capacity defendants pursuant to FED. R. CIV. P. 56. We review a district court's grant of summary judgment *de novo*.  *Sims v. City of Madisonville*, 894 F.3d 632, 637 (5th Cir. 2018).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fᴇᴅ. R. Cɪᴠ. P. 56(a). "A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Sims*, 894 F.3d at 637 (internal quotations and citation omitted).

### III.

On appeal, Doe challenges the dismissal of his claims against the University and the official capacity defendants and the subsequent dismissal of his claims against the individual capacity defendants. Taking each ruling in turn, we conclude that the district court properly dismissed Doe's complaint.

### A.

Doe first challenges the district court's dismissal of his claims against UNTHSC and the official capacity defendants. The district court determined these claims are barred by res judicata. Res judicata—or claim preclusion—bars "the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Singh*, 428 F.3d at 571 (citing *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004)). "A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Because Doe filed the first suit in a Texas state court, Texas claim preclusion law applies to the federal action. *See Harmon v. Dallas County*, 927 F.3d 884, 890 (5th Cir. 2019).

Under Texas law, res judicata requires "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of the parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S.*

*Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996); *see also Sims* 894 F.3d at 644. Doe only challenges the final element (the "same claim" element) on appeal.

To determine whether the same claim element is met, Texas has adopted a transactional test, which mirrors its federal counterpart. *See Weaver v. Tex. Cap. Bank N.A.*, 660 F.3d 900, 907 (5th Cir. 2011). The Texas Supreme Court has stated that, "[u]nder this approach, a judgment in an earlier suit 'precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit.'" *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 798 (Tex. 1992) (quoting *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630 (Tex. 1992)). In determining whether facts constitute a single "transaction," several factors are weighed: "their relatedness in time, space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." *Id.* (quoting Restatement (Second) of Judgments § 24 cmt. b).

Doe maintains that his claims in *Doe I* do not arise from the same nucleus of operative facts because the facts underlying the current lawsuit have a different origin or motivation. Doe argues that his claims in *Doe I* only related to the 2017 SPC proceedings and that his claims in the current lawsuit are based on discriminatory conduct that he discovered during *Doe I*. But this argument is unpersuasive.

Doe is merely asserting different theories of recovery based on the same operative facts. *Doe I* reflects a state court final judgment on the merits related to his dismissal from medical school. Doe now seeks to assert different theories of recovery based on the same facts, *i.e.*, the series of events that led to his dismissal from TCOM. As our precedent makes clear, "[d]ifferent theories of recovery based on the same operative facts do not generate different causes of action." *Sims*, 894 F.3d at 645 (citing *Hogue v.*

*Royse City*, 939 F.2d 1249, 1253–54 (5th Cir. 1991)).  Accordingly, Doe's claims are clearly barred by res judicata, and dismissal of the claims against UNTHSC and Drs. Filipetto, Mire, and Moorman in their official capacities was proper.

## B.

Next, we turn to the district court's dismissal of Doe's claims against the Drs. Filipetto, Mire, and Moorman in their individual capacities.  Doe argues that the individual capacity defendants violated his constitutional rights to due process and equal protection.

## 1.

Doe alleged in his complaint that the individual capacity defendants violated his right to procedural due process of law.  "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

To show a violation of his procedural due process rights, Doe must first show that he has a protected interest in higher education.  The district court assumed that Doe had a liberty or property interest at stake.  *See Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 85 (1978) (assuming that a medical student had been deprived of liberty or property interest when she was dismissed from medical school).  Defendants did not challenge this finding before us, so we will assume, as the district court did, that Doe has a protected interest in higher education.

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  In cases

of academic dismissals, the school must afford the student "meaningful notice and an opportunity to respond." *Davis v. Mann*, 882 F.2d 967, 975 (5th Cir. 1989) (citing *Mathews*, 424 U.S. at 333); *see also Shah v. Univ. of Texas Sw. Med. Sch.*, 129 F. Supp 3d 480, 497–98 (N.D. Tex. 2015), *aff'd*, 668 F. App'x 88 (5th Cir. 2015). "[A] student has received all the procedural due process where the school fully informed him of the faculty's dissatisfaction with his clinical progress and the danger that this posed to timely graduation and continued enrollment." *Shah*, 129 F. Supp. 3d at 500 (quoting *Horowitz*, 435 U.S. at 85) (cleaned up).

In this case, Doe received all the due process protections to which he was entitled. Doe does not dispute that he received three separate notices regarding his academic dismissal: the July 10 Notice, the July 17 Notice, and the July 25 Notice. These notices informed Doe of the faculty's dissatisfactions with his performance and informed him of the next steps in the process and how he could be heard on the matter. Then, even after Doe was informed of the SPC's decision to dismiss him, he was given an opportunity to appeal his decision.

Doe contends, however, that these notices did not meet due process protections because the school should have known that he was not checking his student email address during his leave of absence. But, to the extent there may be merit in such an argument, the record shows that Doe was, on occasions, checking his student email account during his leave of absence. Furthermore, Doe has cited no authority to support his theory that notice was improper because it was sent to his official university email address.

We have, however, routinely affirmed academic dismissals when the student is given multiple notices and the opportunity to appeal a dismissal. *See, e.g.*, *Shah*, 129 F. Supp. 3d at 500 (dismissing procedural due process claims when the medical student was given multiple notices and appealed a

committee's decision to dismiss him); *Shaboon v. Duncan*, 252 F.3d 722, 731 (5th Cir. 2001) (affirming dismissal of procedural due process claims when a medical resident did not receive a hearing but was informed that her residence was in jeopardy and of her deficient performance); *Perez v. Texas A&M Univ. at Corpus Christi*, 589 F. App'x 244, 250 (5th Cir. 2014) (per curiam) (unpublished) (affirming dismissal of nursing student's procedural due process claims when the student received multiple written warnings and had the opportunity to apply for reinstatement). Accordingly, we reject Doe's assertion that the individual capacity defendants violated his procedural due process rights. The claims were properly dismissed.

2.

Doe also contends that the individual capacity defendants violated his right to equal protection because they believed him to be bipolar. The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Essentially, the Equal Protection Clause assures that "all persons similarly situated should be treated alike." *Stoneburner v. Sec'y of the Army*, 152 F.3d 485, 491 (5th Cir. 1998) (internal citation omitted). Individuals are similarly situated when they are alike in all relevant respects except for their membership in the protected class. *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

To successfully state a claim under the Equal Protection Clause, Doe must show that "a state actor intentionally discriminated against [him] because of [his] membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (quoting *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989)) (internal quotation marks omitted). The Equal Protection Clause "requires only that the classification rationally further a legitimate state interest," unless the classification warrants "some form of heightened

review." *Nordlinger*, 505 U.S. at 10.  Classification based on mental illness does not warrant heightened review.  *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 442 (1985).

Doe's equal protection claim cannot succeed because he failed to show evidence that the individual capacity defendants intentionally discriminated against him because of his membership in a protected class.  In other words, Doe failed to show that he was treated differently than students similarly situated to him.  Specifically, Doe failed to show evidence of similarly situated students who, (1) were granted a medical leave of absence, (2) failed to satisfy the conditions of their return to the academic program, (3) ignored multiple notices about this failure sent to their university email address, and (4) failed to appear before the SPC or to provide a written statement to explain the situation, were ultimately treated any differently by the individual capacity defendants.  Because Doe has failed to identify any similarly situated students, he cannot show that the individual capacity defendants intentionally discriminated against him because of his perceived mental disability.  Thus, the district court properly dismissed this claim.

## IV.

In sum, the district court properly dismissed Doe's claims. Accordingly, the judgment of the district court is, in all respects,

AFFIRMED.

12